## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* COUTCH.

### Opinion delivered January 12, 1914.

1.  RAILROADS—RIGHT TO CONTRACT AGAINST LIABILITY.—A railroad company can not, by an agreement with a third party, delegate to him the right to operate and control its trains so as to relieve itself from liability, for damages caused by the operation of trains. (Page 8.)

2.  MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK.—Where there are two ways in which an employee may perform his work, and he chooses the more dangerous way, if that way is not so dangerous that a person of ordinary prudence would not have undertaken it, it can not be said that the employee was guilty of such negligence as will bar a recovery if he is injured. (Page 9.)

3.  MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE.—Where plaintiff was injured by the sudden movement of a train upon which he was working, an instruction that the giving of a warning signal by the engineer that the train was about to move, would relieve defendant from liability, is erroneous under the facts, as leaving out the question of the negligence of the foreman in instructing the engineer to move the train. (Page 10.)

Appeal from Jackson Circuit Court; *R. E. Jeffery,* Judge; affirmed.

#### STATEMENT BY THE COURT.

The plaintiff, Will Coutch, brought this suit against the defendant, St. Louis, Iron Mountain & Southern Railway Company, to recover damages for personal injuries

sustained by him by reason of the alleged negligence of the railway company.

The testimony of the plaintiff for himself, briefly stated, is as follows: I was engaged in loading ties on the cars of the defendant railway company at Standard, Louisiana, at the time I was hurt, and was employed for that purpose by Mr. DeCamp. Mr. John Clifton was the foreman in charge of the loading crew. We were loading ties in freight cars which were attached to an engine. The engine and cars belonged to the railway company, and its crew, composed of the conductor, engineer, fireman, etc., were employees of the railway company. Our method of loading the ties was that a gang-plank would be placed from the car down to the ground, and we would walk up and down that plank while engaged in our work. When the ties on one side of the car were loaded, the foreman would order us to the other side of the car, and we were directed to go over the drawhead between the cars. One of the men always stayed behind and handed the gang-plank across to the others before he crossed over. The cars were spotted under the direction of our foreman, but when the train was moved from one pile to another, the orders to move the train were always given by the conductor. On the day I was injured, we had taken up the ties on one side of the train, and our foreman directed us to cross over to the other side. The other men had crossed over the drawhead between the cars, and I had remained behind to pass over the gang-plank. When I passed the gang-plank over, I walked between the cars and placed my hands against the ends of the cars, preparatory to jumping over the drawhead. While I was in this position, the train suddenly started, without giving any warning by whistle or otherwise, and I was thrown down between the cars, and my foot was severely injured. Subsequently, I was removed to St. Vincent's hospital for treatment and remained there for several months. During the time I was there, it was deemed necessary to amputate my foot, and this was done.

The testimony on the part of the railway company

is as follows: Mr. DeCamp made a contract with the railway company to load ties for it at two cents per tie. When the railway company wanted ties loaded, it notified Mr. DeCamp where it wanted them loaded, and he was carried to that place and furnished a crew for that purpose. The ties were loaded on a train furnished by the railway company and in charge of its servants, in so far as it was necessary to protect the other trains running over the road. Mr. DeCamp, under the terms of the agreement, had charge of the train while engaged in loading the car. The railway company would designate what piles of ties it wanted loaded, and the contractor had exclusive authority over the movement of the train in loading the ties. The cars were spotted under the direction of the contractor, and were moved from one pile to another for the purpose of loading the ties under his direction. In such cases, the foreman of the contractor gave the signal to the engineer to move the train, and at the time plaintiff was injured he gave the signal to the engineer to move the train. The injury occurred while the train was standing on the main line of the railway company. The jury returned a verdict in favor of plaintiff for the sum of one thousand dollars, and the railway company has appealed.

*E. B. Kinsworthy, Campbell & Suits* and *T. D. Crawford,* for appellant.

*Robertson & DeMers,* for appellee; *Ira J. Mack,* of counsel.

Hart, J., (after stating the facts). The principal contention of counsel for defendant is that Mr. DeCamp was an independent contractor and that the plaintiff being his servant, the defendant company is not liable. In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Chappell,* 83 Ark. 94, the court said:

"Judge Noyes in his recent work on Intercorporate Relations says: 'Upon the principle that a corporation owing duties to the public can not shift the responsibility for their performance without the consent of the State, a

railroad company, permitting another company to use its tracks, remains liable for injuries to third persons—passengers, travelers at crossings and others—caused by the negligence of employees of the latter company in running its trains, to the same extent as if they were its employees upon its own trains. The negligence of the licensee company is the negligence of the proprietary company.' Noyes on Intercorporate Relations, 261. Mr. Elliott lays down the same principle as sustained by the weight of authorities. 2 Elliott on Railroads, No. 447.''

Counsel for defendant concedes that a railway company can not evade its duties to the public by turning its trains over to the control of another, but they contend that DeCamp was an independent contractor and that the railway company was not liable for the failure to furnish his employees a safe place in which to work. The courts have frequently said that the creation of a corporation to operate a railroad is the exercise of a sovereign power and includes the grant of important franchises. Such corporations have power to exercise the right of eminent domain and various rights and privileges not possessed by natural persons, in return for which they are placed under obligation to perform certain duties to the public. Upon principles of public policy and the general rules applicable to contracts, a railway company can not, without the consent of the State, absolve itself from any duties imposed by its charter and the general laws of the State by any agreement made with a third person. In the present case, the railroad was already constructed and in operation for the purpose of traffic. Applying the principles above announced to the facts stated in this case, the railroad company could not, by agreement with a third person, delegate to him the right to operate and control its trains so as to relieve itself from responsibility therefor. Although DeCamp might be considered an independent contractor, so far as loading the ties was concerned, the railroad company could not go further and by contract with him relieve

itself from any liability arising from the operation of its trains. It could delegate to DeCamp, or his foreman, the power to manage and control its trains in whole or in part, but by so doing it could not relieve itself from responsibility for their negligence while so engaged. According to the facts of this case, the plaintiff was at the place where he was injured by the express invitation and agreement of the defendant railway company with De-Camp, his employer, and was engaged in loading ties for the railway company, so that it will be seen plaintiff was not at the place where he was injured as a trespasser or merely by license of the defendant, but was rightfully there, doing a lawful act. Therefore, under the proof stated in our statement of facts, which need not be re-stated here, the questions of the negligence of the defendant, and of the contributory negligence of the plaintiff, were questions of fact which should have been passed on by the jury.

It is next insisted by counsel for defendant that the court erred in not giving instruction No. 7, which is as follows:

"If the plaintiff had more than one method by which he might have performed his duties, and he voluntarily chose the more hazardous one, knowing it to be such, then plaintiff made his choice at his own risk."

It should not be said that, because plaintiff went between the cars when it was possible for him to have chosen a safer route around them, he was, as a matter of law, not entitled to recover. According to his testimony, he chose that route under the direction of his foreman, and it had been the custom of the employees to cross over in that way. In discussing the question in the case of *Hedrick* v. *H. D. Cooperage Co.,* 97 Ark. 553, the court said:

"Even though there may be two ways open to an employee in which to perform his work, one of which turns out to be less dangerous than the other, and he adopts the other way, yet, if that way is not so dangerous that a person of ordinary prudence would not have

undertaken it, the court should not say that the employee was guilty of negligence because he chose that way which was reasonably safe, but which was not the safer. We think, as said in our former cases, that to adopt that rule would be to make the employee the insurer of his own safety in choosing between two methods of doing his work, either of which might be reasonably safe.''

Again it is insisted by counsel for defendant that the court erred in not giving instruction No. 3, which is as follows:

''If the engineer, before moving his train, gave warning signals that the train was about to be moved, then there was no negligence upon the part of the defendant.''

In view of the principles of law announced above, the giving of this instruction would have been erroneous. It would have prevented the plaintiff from recovering if the jury found that the engineer gave the signal before he moved the train. This would leave out of consideration the negligence of the foreman in giving the engineer orders to move the train before the plaintiff had crossed over when he had directed him to do so. According to the undisputed testimony, the train was not to be moved until orders therefor were given, as the plaintiff states, by the conductor, and, as the defendant's witnesses testify, by the foreman of the contractor. According to the instructions asked, if neither of these parties had given orders to move the train, the defendant would not be liable if the engineer gave a warning signal before he moved the train. Moreover, the engineer might have given the signal to move the train after plaintiff had already gotten between the cars in a place of danger; and this instruction, in that event, would have prevented a recovery by the plaintiff.

Other instructions are assigned as error by counsel for defendant, but, in view of the principle of law we have already declared, we do not think there was any error in giving them, and believe it would be a useless consumption of time to set them out and discuss them separately.

Complaint is also made of the argument of counsel for plaintiff; but we do not think the remarks made by counsel are reversible error. They were merely opinions deduced by him from the evidence before the jury, and were expressed as his opinion.

The judgment will be affirmed.