## Wytheville.

### J. S. Bowers, T. A. Loving and Royal Indemnity Company v. Town of Martinsville.

June 18, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Hudgins, JJ.

The opinion states the case.

*Williams & Mullen, Guy B. Hazelgrove* and *Ralph T. Catterall,* for the plaintiffs in error.

*Harris, Harvey & Brown* and *Cabell & Cabell,* for the defendant in error.

EPES, J., delivered the opinion of the court.

This is a proceeding by attachment which was instituted in the Circuit Court of the city of Richmond by the town of Martinsville against J. S. Bowers, T. A. Loving and the Royal Indemnity Company, a corporation, as principal defendants, and the State Highway Commission and Treasurer of the Commonwealth of Virginia as co-defendants.

The facts out of which this litigation grows are as follows:

The town of Martinsville owns and operates a hydro-electric plant, the power for which is supplied by a dam across Smith river in Henry county, the water from which is conducted to the powerhouse by a canal running along the north side of the river at an elevation of about twenty-two feet above the river. The town owns the land on both sides of the river for a dis-

tance of 1,000 feet below this dam, and the canal and its banks are on the land owned by the town.

The channel of the canal is approximately fifty feet wide, and under normal conditions the water in the canal is about twelve feet deep.

The south bank of the canal is an embankment or levee of earth about twenty feet high, the foot of the slope of which begins near the river bank. At its base the embankment is about sixty feet wide, and at the top from twelve to fifteen feet wide. On the inner side of the embankment, for a part of the length of the canal, there was a retaining wall constructed of rock and concrete. The eastern end of this retaining wall was about midway of the length of the cofferdam hereafter mentioned.

The embankment had been built some twenty-three years prior to the time of the events here involved and was in good condition when Loving began excavating into it for the construction of the piers and abutments of the bridges below mentioned.

State Highway No. 33 formerly crossed this canal and Smith river on wooden bridges about seventy-five feet below the dam. In 1927 the State Highway Commission authorized the construction of concrete bridges over Smith river and this canal to replace the wooden bridges then in use, the new bridges to be located a few feet below the old wooden bridges. The work to be done in the construction of these bridges was designated as Project No. 458-C.

The Commonwealth had not at the time of the completion of these concrete bridges acquired title to the land on which they were constructed or a right of way therefor across this canal, nor had it instituted condemnation proceedings to acquire the same.

The Commonwealth of Virginia, through the State Highway Commission, entered into a written contract, dated August 10, 1927, with J. S. Bowers for the construction of these

bridges. . This contract provided that all the labor and material was to be furnished and the bridges constructed by Bowers in accordance with plans and specifications prepared by the State Highway Commission and made a part of the contract. It also required Bowers to execute a bond with surety, payable to the Commonwealth of Virginia, and conditioned as prescribed by the State Highway Commission.

J. S. Bowers, as principal, and Royal Indemnity Company, as surety, executed and delivered the bond required by said contract. By this bond, which recites said contract, J. S. Bowers, as principal, and Royal Indemnity Company, as surety, acknowledge themselves to be jointly and severally bound to the Commonwealth of Virginia in the sum of $17,-400.00, and the condition of the bond, omitting immaterial language, reads as follows:

"The condition of this obligation is such that if the above bounden principal shall in all respects comply with the terms and provisions of said contract and his obligations thereunder * * * and shall indemnify and save harmless the said owner (*i. e.*, the Commonwealth of Virginia) against or from all costs, expenses, damages, injury or loss to which the said owner may be subjected by reason of any wrong-doing, misconduct, want of care or skill, negligence or default, * * * on the part of said principal, his agents or employees, in the execution or performance of said contract, * * * and shall promptly pay all just claims for damages, for injury to property and for labor and material, incurred by said principal in or about the construction or improvement contracted for, then this obligation to be void; otherwise, to remain in full force and virtue in law."

Subsequently Bowers entered into the contract with T. A. Loving and T. B. Dameron, partners doing business as T. A. Loving and Company, which is contained in the following letter:

"September 6, 1927.

"T. A. LOVING AND COMPANY,

"Goldsboro, N. C.

"GENTLEMEN:

"As to my agreement with your Mr. T. A. Loving several days ago I have agreed to let your company have the two bridges at Martinsville, Va., known as Project 458-C amounting to $65,316.75 as follows:

" 'It was agreed that I would let your company have this project at my contract price and that you would put a force on this project in the next ten days and that this job would be handled in the same manner that it would be if you had the direct contract with the State Highway Commission of Virginia.

" 'The T. A. Loving and Company agreed to pay J. S. Bowers $2,500.00 for this project; $1,250.00 to be paid when the project is half completed and the balance of $1,250.00 to be paid when the job is completed, and in addition to the $2,500.00 the T. A. Loving and Company will pay the premium on the performance bond and also carry liability insurance as provided by the State of Virginia's workman's compensation law.'

"I agree to pay to the T. A. Loving and Company the amount of estimates turned in by the State Highway Commission's engineer each month as soon as I receive the check for the estimate.

"The T. A. Loving and Company agrees to pay all bills in connection with this project or any damage suits that may arise from same.

"If the above memorandum is suitable to you please sign both copies, retaining the duplicate and returning the original to this office. Upon the execution of the memorandum I will

mail you a statement of the premium on this contract together with the carload of steel and the cost of unloading same.

"Yours truly,

"J. S. BOWERS,

"General Contractor.

"Signed

"T. A. Loving and Company,

"By. . . . . . . . . . . . . . . . .

"JSB/s."

No consent of the State Highway Commission was ever sought or given to the assignment of the contract for the construction of these bridges by Bowers to T. A. Loving and Company.

Acting under the contract contained in said letter, Loving took as complete charge of the building of these bridges and proceeded to construct them as if he himself had been the person with whom the Commonwealth of Virginia had contracted for the construction thereof; and, without the exercise by Bowers of any supervision or control over him, constructed the bridges in accordance with the plans and specifications prepared by the State Highway Commission. As sums became due to Bowers from the Commonwealth under the contract of August 10, 1927, Bowers received payment thereof and paid over to T. A. Loving and Company the amounts so received by him, less sums due by T. A. Loving and Company to him. Further than this, however, Bowers had no connection with the construction of these bridges after the work was turned over to T. A. Loving and Company under the agreement contained in said letter.

The plans for the two bridges required that the concrete abutment for the north end of the bridge over the river and the concrete abutment for the south end of the bridge over the canal be placed on opposite sides of the south bank of the canal with only about the width of the top of the canal bank

between their faces, and that excavations for these abutments and for the piers at the north end of the bridge over the river be made in the south bank of the canal to a depth below the bed of the canal. The concrete abutment for the south end of the bridge over the canal (designated as "Abutment A") was located so that while the greater portion thereof was to be placed in an excavation made therefor in the south bank of the canal, a part thereof extended out into the channel of the canal, and the construction thereof required that a few feet of the eastern end of the masonry retaining wall along the inner surface of the canal bank be removed.

Loving made the excavations on the river side of the canal bank for the two northern piers and the north abutment of the river bridge and poured the concrete for them. Then, before he had fully restored the canal bank where he had excavated it on its river side, he began excavating it on the canal side for "Abutment A." In order to do this, it was necessary to construct a cofferdam to keep the water in the canal from running into the excavation being made for "Abutment A," and then breaking through the canal bank, where it had been weakened by excavations on both sides of it.

The plans and specifications made a part of the contract did not contain any plans for or specify that such cofferdam should be built, but left the method of taking the necessary precautions in making the excavation to the discretion of the contractor.

Loving constructed a cofferdam around the place of the excavation for "Abutment A," which extended out in the channel of the canal. The cofferdam began at a point above where the excavation for "Abutment A" was to be made, extended down stream about forty-five feet to a point below the easteren end of said masonry retaining wall, and then turned into the inner surface of the canal bank.

When Loving stopped work for the Christmas holidays he left only a watchman on the job. At this time the excavation

for "Abutment A," which was being made under the protection of the cofferdam, had been carried well below the bed of the canal.

On the night of December 26, 1927, water began escaping around the lower end of the cofferdam from the canal into the excavation made for "Abutment A"; and J. H. Pharis, an employee of the town, having been notified of this by some person, who is not identified further than that he was not Loving's watchman, went to the scene. When Pharis got there he found neither Loving nor any of his employees there. He discovered a hole about one foot in diameter about eighteen inches below the top of the canal bank, just at the downstream end of the cofferdam, through which water was flowing around the end of the cofferdam into the excavation for "Abutment A." The bank was solid on top and there was no indication that water had gone over the top of the canal bank.

Pharis lowered the gates at the dam, or had them lowered, so as to lower the level of the water in the canal about two feet below the hole in the canal bank, and thinking this would prevent further injury, took no further steps. However, by 8:30 o'clock the next morning the water had again broken through the bank at this point, flowed into the excavation for "Abutment A" and on into the river, and washed out a large place in the canal bank. This made it necessary to close the gates entirely and keep the water shut off from the canal until the break was repaired.

Though requested to repair the break in the canal bank promptly, Loving did not repair it so that the water could be again turned into the canal until March 6, 1928. Before repairing the bank he proceeded to complete the excavation for and construct "Abutment A," to drive the piles for the construction of the abutment at the north end of the bridge over the canal, and to do other work in and about the construction of the bridge over the canal while the canal was dry.

The town of Martinsville could not itself make the necessary

repairs without stopping Loving from his work, moving his equipment, filling up the excavation made for "Abutment A," and destroying a portion of the work already done by Loving.

For sixty-eight days the water had to be kept shut off from the canal. During this time the town of Martinsville was forced to purchase electric current from the Appalachian Power Company, by reason of which fact it suffered a loss of at least the amount sued for.

The only material conflict in the evidence is as to whether Loving was guilty of negligence in the manner in which he constructed and maintained the cofferdam, and if so, whether such negligence was the proximate cause of the break in the canal bank. The evidence on these points is conflicting, and as these questions were submitted to the jury, which found a verdict for the town, it is sufficient to say, without reviewing the evidence, that there is evidence in the record to support a verdict of the jury finding that Loving was guilty of negligence in the construction and maintenance of the cofferdam, and that such negligence was the proximate cause of the break in the canal bank.

The petition for attachment sets forth the ownership by the town of Martinsville of this canal, the contract between the Commonwealth of Virginia and J. S. Bowers for the building of these bridges, and the said bond executed by Bowers, as principal, and Royal Indemnity Company as surety, and alleges that in constructing said bridges "J. S. Bowers * * * and T. A. Loving, his agent and servant, negligently and carelessly dug into and removed the support of the south bank or levee along said canal," and "constructed an insufficient cofferdam," which negligence caused a break in said canal bank as a direct result of which the town suffered damages to at least the amount of $5,674.08. It further alleges that "Royal Indemnity Company is liable to the petitioner for said sum by reason of having become surety on the aforesaid bond of said defendant, J. S. Bowers, to pay to petitioner the legal liabilities

of said J. S. Bowers and his agents and servants arising out of the performance of said contract."

The grounds for attachment are thus alleged in the petition: "J. S. Bowers and T. A. Loving are non-residents of the State of Virginia, and have estate or debts owing to said defendants within the city of Richmond, Virginia, in which this attachment proceeding is instituted." * * *.

"The Commonwealth of Virginia, through the State Highway Department and the Treasurer of Virginia, is indebted to the principal defendant, J. S. Bowers, in at least a sum sufficient to pay the damages herein claimed." * * *

The petition prays that an attachment may issue against the principal defendants and codefendants, and "that your petitioner may have judgment against said defendants and codefendants for the sum of $5,674.08, with interest from February 20, 1928, until paid."

The codefendants answered saying that "the State of Virginia has in its possession to the credit of J. S. Bowers, contractor on Project 458-C, Route 33, State Highway System, the sum of $5,312.80;" but that the "Commonwealth of Virginia, through the State Highway Commissioner, is not indebted to T. A. Loving."

The only property attached was said sum of $5,312.80 mentioned in the answer of the codefendants.

J. S. Bowers and Royal Indemnity Company appeared generally and answered the petition.

Bowers in his answer denies that he has been guilty of any negligence "in connection with the construction and building of the improvements described in the petition," and sets up the defense that he "contracted with Messrs. T. A. Loving and T. B. Dameron, partners trading as T. A. Loving and Company, as independent contractors for the execution thereof (i. e., said contract), and that said T. A. Loving and Company performed all of the work under said contract as independent contractors and not as the servant, agent, employee

or representative of this defendant (Bowers), and this defendant accordingly is not liable or responsible for the acts of said T. A. Loving and Company."

Royal Indemnity Company in its answer sets forth the condition of the bond signed by it as surety for Bowers, denies that Bowers is liable to the town of Martinsville as set forth in the petition, and asserts that its liability is secondary only, and is dependent upon the liability of J. S. Bowers, but makes no denial of its liability to the town of Martinsville if Bowers be liable to the town.

The Royal Indemnity Company before the trial moved the court "to abate this action as to it upon the ground of misjoinder of causes of action, in that the action was brought in tort, whereas the Royal Indemnity Company was liable only in covenant or assumpsit." The court then overruled this motion. Royal Indemnity Company again renewed the motion upon the completion of the taking of evidence, and the court again overruled the motion.

No process was served upon T. A. Loving, but he appeared specially and filed his plea in abatement praying that the proceeding be abated as to him because "he did not have any estate or debt owing to him in the city of Richmond."

All questions of fact and law with reference to the plea were submitted to the court without a jury, and after hearing evidence the court overruled the plea.

At the conclusion of the evidence the defendants moved the court to exclude all the evidence of the plaintiff because T. A. Loving was not properly before the court, and the evidence showed that Bowers was not liable for any damage, which motion the court overruled.

The cause was then submitted to the jury on the evidence and instructions of the court. The jury returned the following verdict: "We, the jury, on issue joined, find for the plaintiff, and assess their damages at $5,674.08, with interest from February 20, 1928."

The defendants moved the court to set aside the verdict as contrary to the law and evidence, which motion the court overruled and entered its judgment that "the plaintiff recover against the principal defendants the sum of $5,674.08 with interest thereon * * * from the 20th day of February, 1928, until paid, and its costs." To this judgment Loving, Bowers and Royal Indemnity Company assign error.

The first assignment of error is, that the court erred in overruling the plea in abatement filed by Loving, because Loving was a nonresident, had no property within the jurisdiction of the court, and no property of his was attached.

The defendant in error admits that if Loving did not have an interest which is subject to attachment in the fund of $5,312.80 held by the Commonwealth of Virginia, his plea in abatement was good, and it was error to have entered a personal judgment against him in this proceeding.

Section 6379, Code Virginia 1919, provides that it shall be a ground for an attachment that the principal defendant: "Is * * * not a resident of this State, and has estate or debts owing to said defendant within the county or city in which attachment is, or that said defendant, being a nonresident of this State, is entitled to the benefit of any lien, legal or equitable, on property, real or personal, within the county or city in which the attachment is."

It further provides that "the word 'estate,' as herein used, shall include all rights or interests of a pecuniary nature which can be protected, enforced, or proceeded against in courts of law or equity."

Then the plea in abatement was good unless:

(1) The Commonwealth of Virginia was indebted to Loving; or

(2) Loving was entitled to a lien, legal or equitable, on the fund of $5,312.80 held by the Commonwealth of Virginia to the credit of J. S. Bowers; or

(3) Loving had some right or interest in said fund of

$5,312.80 which he could enforce in a court of law or equity, or which could be proceeded against in a court of law or equity as his property.

The mechanics' lien statutes (Code 1919, sec. 6426) have no application to contracts with the Commonwealth or political subdivisions thereof for the construction of public improvements, and do not give a subcontractor any lien on sums due by the Commonwealth or a political subdivision thereof to the contractor for the construction of public improvements. *Philips* v. *University of Va.*, 97 Va. 472, 34 S. E. 66, 47 L. R. A. 284; *Hicks* v. *Roanoke Brick Co.*, 94 Va. 741, 27 S. E. 596; *London Bros.* v. *National Exch. Bank*, 121 Va. 460, 93 S. E. 699. And our attention has been called to no statute or rule of law which authorizes a subcontractor to sue the Commonwealth and recover from it for labor and material furnished to one who has contracted with the Commonwealth for the construction of a public improvement.

The contention of the defendant in error can be sustained only on the theory that in the contract between Bowers and T. A. Loving and Company, Bowers assigned to T. A. Loving and Company all sums to become due to him from the Commonwealth under his contract with it. This is not, we think, the true construction of the contract between Bowers and T. A. Loving and Company.

The contract between the Commonwealth and Bowers was not assignable without the consent of the Commonwealth. *Burck* v. *Taylor*, 152 U. S. 634, 14 S. Ct. 696, 38 L. Ed. 578. Not only was the consent of the Commonwealth neither procured nor sought to an assignment of this contract by Bowers to T. A. Loving and Company; but the very terms of the contract show that it was the intention of the parties that Bowers should remain as the person contracting with the Commonwealth, and that he and his surety should remain responsible to the Commonwealth for the performance of this contract.

The language of the contract provides that Bowers shall

receive all sums due him by the Commonwealth, and that he (Bowers) shall pay Loving for the work done as he (Bowers) receives payment from the Commonwealth. This is not an assignment to T. A. Loving and Company of sums to become due by the Commonwealth to Bowers.

The effect of the contract between Bowers and T. A. Loving and Company was, we think, that Bowers employed T. A. Loving and Company as an independent subcontractor to construct these bridges; and though the contract provided that the job should be handled by T. A. Loving and Company in the same manner that it would be if they had the contract direct with the State Highway Commission, and that Bowers should pay T. A. Loving and Company for the work when and as he (Bowers) received payment from the Commonwealth, T. A. Loving and Company had no more right to or interest in the sums due to Bowers from the Commonwealth than any subcontractor furnishing labor or material to Bowers for the construction of the bridge would have had.

If Bowers had failed to pay T. A. Loving and Company the sums received by him from the Commonwealth, T. A. Loving and Company would have had a right of action against Bowers, a nonresident of Virginia, but nothing more.

We are, therefore, of opinion that the Commonwealth was not indebted to Loving in any sum; that Loving was not entitled to the benefit of any lien, legal or equitable, on the sum held by the Commonwealth to the credit of Bowers; that Loving had no right to or interest in such sum as such which he could enforce at law or in equity, or which could be proceeded against at law or in equity as his property, and that the court erred in not sustaining the plea in abatement and dismissing the proceeding as to Loving, and in entering any judgment against him.

The second assignment of error is that the court erred in overruling the motion of the Royal Indemnity Company to abate this proceeding as to it for misjoinder of causes of

action, because "Royal Indemnity Company could be liable only in contract and Loving could be liable only in tort," and "causes of action in contract and tort cannot be united."

Section 6104, Code Virginia 1919, relating to pleadings, provides that "the court shall, at every stage of the proceedings, disregard any error or defect which does not affect the substantial rights of the parties."

Section 6118 provides in part: "On a demurrer (unless to a plea in abatement), the court shall not regard any defect or imperfection in the declaration or other pleading, whether it has been hereafter deemed mispleading or insufficient pleading or not, unless there be omitted something so essential to the action or defense that judgment, according to law and the very right of the cause, cannot be given."

Section 6331 provides, in part: "No judgment or decree shall be arrested or reversed * * * for any defect, imperfection, or omission in the pleadings, which could not be regarded on demurrer, or for any other defect, imperfection, or omission in the record, or for any error committed in the trial when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached."

Under the bond executed by Bowers, as principal, and Royal Indemnity Company, as surety, they were both jointly and severally liable for the payment of damages to property caused by the negligence of Bowers and of his agents and servants in and about the execution of the contract between Bowers and the Commonwealth. That this bond was executed in part for the benefit of the town of Martinsville, and that it could maintain an action thereon in its own name has been held by this court in the following cases: *Aetna Cas. & Surety Co.* v. *Earle-Lansdell Co.*, 142 Va. 435, 129 S. E. 263, 130 S. E. 235; *Fidelity & Deposit Co.* v. *Bailey-Pleasants Co.*, 145 Va. 126, 133 S. E. 797; *Fidelity & Deposit Co.* v. *Bailey-Spencer Hdw.*

*Co.,* 145 Va: 133, 133 S. E. 799; and *Fidelity & Deposit Co. v. Mason,* 145 Va. 138, 133 S. E. 793.

There was then no misjoinder of the causes of action against Bowers and Royal Indemnity Company. As has been stated above, the proceeding should have been dismissed against Loving under his plea in abatement; and even if there was technical error in joining the cause of action against Loving with the cause of action against Royal Indemnity Company, it plainly appears from the record and the evidence given at the trial that Royal Indemnity Company and Bowers have had a fair trial on the merits and substantial justice has been reached. Therefore, in view of the statutes above quoted, the second assignment of error is not well made.

The third assignment of error is that the court erred in giving instruction A, which reads as follows:

"The court instructs the jury that if they believe from the greater weight of the evidence that the said defendant, J. S. Bowers, assigned his contract with the State Highway Commission to said T. A. Loving, without obtaining a release from his liabilities under said contract from the State Highway Commission, that said T. A. Loving is primarily liable and said J. S. Bowers is also liable for the acts of said Loving in executing said contract, and if the jury find from a greater weight of the evidence that the said defendant, T. A. Loving, in the execution of said contract for the building of the bridge over Smith river and the mill race, negligently and carelessly dug into and removed the support of the south bank of said canal, and negligently and carelessly set off blasts of dynamite in close proximity to said bank and permitted said bank to cave in, or negligently or carelessly constructed an insufficient cofferdam and permitted the water of said canal to escape therefrom and flow back into Smith river, and thereby deprive plaintiff of the use of said canal or the water therein for power purposes, and if the jury further believes that as a direct result of such negligence plaintiff has sustained damages and lost the

use of such water for power purposes, plaintiff is entitled to recover the value of the current so lost against all of the defendants, J. S. Bowers, T. A. Loving and Royal Indemnity Company, and the jury should so find."

The objection made to this instruction is that the evidence shows that Loving was an independent contractor for whose negligence Bowers was not liable, and, therefore, Royal Indemnity Company was not liable. This objection is not well taken.

The plans and specifications in accordance with which Bowers contracted to construct these bridges required the making of excavations in the south bank of the canal for the abutments of both bridges, and left to his discretion the method of making them. The making of these excavations would necessarily weaken the canal bank and endanger its breaking under the pressure of the water in the canal, unless proper precautions were taken to prevent it. By reason of these facts, the positive duty rested upon Bowers to take proper precautions to see to it that the bank of the canal should not be damaged by the making of these excavations or in doing the work incident thereto. This duty was a non-delegable duty of which Bowers could not relieve himself by the employment of an independent contractor, and, therefore, though Loving was an independent contractor, Bowers remained liable for any negligence of Loving in failing to use proper care in the construction and maintenance of a cofferdam to enable him to make the excavation for the abutment of the bridge over the canal and to prevent the breaking of the canal bank while the strength of the same was impaired by the excavations made therein.

The authorities upon this point will be found collected in notes in 23 A. L. R., pp. 985-1014 and pp. 1017-1081, and we deem it unnecessary to review and discuss them here.

The plaintiffs in error, however, cite to us *Bibb's Adm'r* v. *Norfolk & W. R. Co.*, 87 Va. 711, 14 S. E. 163, which they contend is authority for their position that as Loving was an

independent contractor, Bowers cannot be held liable for any negligence of Loving in making these excavations or in constructing and maintaining the cofferdam here in question.

There are some discussions of citations and other expressions in the opinion in the *Bibb Case* which tend to support the position of the plaintiffs in error, but the facts are so different in the two cases that what is said in the *Bibb Case* cannot properly be said to be controlling in the case at bar. Bibb was an employee of the contractor by whose negligence he was injured and the railroad company owed him no duty which had been breached. In the case at bar Bowers owed a positive duty to the town of Martinsville which has been breached, and seeks to escape liability therefor on the ground that he had employed an independent contractor to perform that duty.

Instruction A is erroneous in that it tells the jury that it may render a verdict not only against Bowers and Royal Indemnity Company, but also against Loving, who was not properly before the court; but that was not reversible error so far as Bowers and Royal Indemnity Company are concerned.

The fourth assignment of error is that the court erred in overruling the motion to set aside the verdict because "there was no evidence of any negligence on the part of T. A. Loving."

This contention is not supported by the record. There is evidence in the record to support a verdict finding that Loving was guilty of negligence in the construction and maintenance of the cofferdam, and the court properly refused to set the verdict aside as to Bowers and Royal Indemnity Company on this ground.

The judgment of the court will be reversed as to Loving and the proceeding dismissed as to him. The judgment against .J. S. Bowers and Royal Indemnity Company will be affirmed.

*Reversed in part; affirmed in part.*