**HODGES et al. v. JOHNSON et al.**

**Civ. Nos. 152–155.**

District Court, W. D. Virginia, at Roanoke.

Nov. 4, 1943.

J. Bradie Allman, of Rocky Mount, Va., for plaintiffs.

Harvey B. Apperson and Fred B. Gentry, both of Roanoke, Va., for defendants.

A. L. Hughson, of Roanoke, Va., for third party defendant.

BARKSDALE, District Judge.

### Statement of the Case.

This action is the consolidation of three actions for personal injuries instituted by three separate plaintiffs, and one action for death by wrongful act instituted by the administrator of the deceased, against Bruce Johnson, trading as Bruce Johnson Trucking Company (hereinafter referred to as "Johnson"), owner of a freight truck, and Clifton Gilmore, the operator thereof as his agent. All the causes of action arise from one collision between the motor truck of Johnson, operated by Gilmore, with the automobile in which the injured plaintiffs and the deceased were travelling. Defendant Johnson filed his third party complaint against Jocie Motor Lines, Incorporated (hereinafter referred to as "Jocie"), alleging that at the time of the accident Johnson's truck had been leased to Jocie, and that therefore he, Johnson, was not liable for the negligence of Gilmore, if any, but that Jocie was. Jocie answered denying any liability for the operation of the truck by Gilmore.

Pursuant to a pretrial conference, the issue of whether Johnson or Jocie, or both, were liable for the negligence of Gilmore, if any, was first submitted to the court, without a jury, before the trial of the other issues in the case. Upon such issue, I find the facts specially and state separately my conclusions of law, as required by Rule 52(a), as follows:

### Findings of Fact.

The accident, which is the basis of this action, occurred on March 30, 1943. Johnson, at and before that time, was engaged in the trucking business in Charlotte, N. C., but had no certificate from the Interstate Commerce Commission permitting him to haul general commodities in interstate commerce. Jocie, also engaged in the trucking business in Charlotte, N. C., did have such a certificate. In order to enable Johnson to haul Swift & Company's products in interstate commerce, Johnson suggested to Jocie that they enter into a lease agreement whereby Jocie would lease the trucks to Johnson, who would haul the products of Swift and others in interstate commerce in the name of Jocie and under authority of Jocie's certificate and license from the Interstate Commerce Commission. Jocie readily agreed, as it had already all the business it could do with its own trucks. Under the agreement and course of conduct of these two truckers, Johnson proceeded to do interstate hauling in his trucks, operated by his drivers, paying for the upkeep and running expenses of the trucks. All freight hauled under the agreement was hauled on standard bills of lading in the name of Jocie, Jocie's name being signed to such bills by whatever employee of Johnson as happened to check the shipment on board the truck. Jocie paid certain taxes, insurance premiums, etc., and Johnson received 80% of the freight charges and Jocie received 20%. Of this 20%, about 8% was net to Jocie after

paying such expenses as it was obligated to pay. Jocie sometimes obtained a return load of freight for Johnson's truck and such return freight was handled the same way. Johnson never hauled return loads of interstate freight for himself, but always for and in the name of Jocie.

Jocie never exercised any control over the operation of Johnson's trucks, or undertook to direct or supervise either the methods, the means, the time, or the routes, for such hauling. Johnson paid, hired and fired his drivers without regard to Jocie.

The trip upon which the accident occurred began in the late evening of March 29, 1943. The load was lard or shortening from Swift & Company in Charlotte, N. C., to two consignees in Roanoke, Virginia. Bills of lading were made out and signed in the name of Jocie by an employee of Johnson. As it was late, the driver, Clifton Gilmore, left Charlotte with the load and copies of the bills of lading, and did not wait for way bills to be made out by Jocie. In fact, Jocie did not know anything about the shipment until informed of the wreck the following day. Gilmore proceeded to Roanoke, delivered his load, procured the signatures of the two consignees on his bills of lading, and was returning empty to Charlotte with his bills of lading when he negligently collided with the automobile of plaintiff, Hubert D. Hodges, near Rocky Mount, Virginia, in this district, causing the death and injuries here complained of.

### Conclusions of Law.

(1) I conclude that Johnson, the owner of the truck, as the employer of Gilmore, and having the supervision and control of his operation, is liable for Gilmore's negligence.

(2) I conclude that Johnson was an independent contractor, and upon the familiar general rule of respondeat superior, there would be no liability upon Jocie for the negligence of Gilmore. Malisfski v. Indemnity Ins. Co., etc., 4 Cir., 135 F. 2d 910; annotation, 42 A.L.R. 1416, and cases therein cited.

However, inasmuch as it appears to me that the situation here presents an exception to the general rule that an employer of an independent contractor is not liable for bodily harm caused by such independent contractor or his servants, I conclude that Jocie is jointly and severally liable with Johnson for the negligence of Johnson's servant, Gilmore.

The exception to which I refer is stated in the "Restatement of the Law of Torts", p. 1149, Section 428, as follows:

"Sec. 428. Contractor's Negligence in Doing Work Which Cannot be Lawfully Done Except under a Franchise granted to His Employer.

"An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."

Undoubtedly, at the time of the accident which is the basis of this action, Johnson, the independent contractor, was carrying on an activity which could be lawfully carried on only under a franchise or certificate granted by the Interstate Commerce Commission, a public authority. Jocie had such a franchise, and Johnson did not, and that was the sole reason for the lease agreement. I am also satisfied that this activity involved an unreasonable risk of harm to others. It is a matter of common knowledge that the transportation of freight upon the highways, usually by means of huge trucks and trailers, is fraught with great danger to the traveling public. It has been deemed necessary by the Legislature of this Commonwealth, and probably by the legislatures of all the states in the Union, to enact comprehensive regulatory laws governing the operation of such transportation. And besides, the Congress of the United States has enacted similar laws for the regulation of interstate freight shipments on the highways and has placed all such business under the regulation of the Interstate Commerce Commission. It is well known that one of the principal purposes, if not the primary purpose, of these regulatory laws is the protection of the traveling public upon the highways.

Therefore, it is my conclusion that public policy requires that the holder of a franchise or certificate from the Interstate Commerce Commission for the operation of freight vehicles in interstate commerce upon the public highways be held

responsible for the operation of such vehicles under said franchise or certificate, by independent contractors of such certificate holders, their servants and agents. Otherwise, the public might be entirely deprived of the safeguards to the public required by the Interstate Commerce Commission, by means of certificate holders evading their responsibility by the employment of irresponsible persons as independent contractors.

This conclusion is supported by the authorities. Besides the above quoted statement from the "Restatement of the Law of Torts", the case of Venuto, etc., v. Robinson, etc., 3 Cir., 118 F.2d 679, seems to me to be directly in point. There, although the court held that the person who actually inflicted the injury was an independent contractor, it nevertheless held that the employer was liable for his negligence, under circumstances very similar to those prevailing here.

See also annotation in 28 A.L.R. 122, where the general principle is stated as follows (p. 123): "A corporation organized for the purpose of discharging certain functions for the benefit of the public cannot, by delegating those functions to another corporation or individual, escape responsibility for injuries caused by the non-performance of those duties which, either by its charter, or by the general laws of the state in which it is organized, are attached to the exercise of the franchises conferred upon it."

■ From the cases cited in this annotation and others, the theory seems to be that where public authority grants to an individual or corporation authority to engage in certain activities involving danger to the public, which right is denied to the general public, the duty to safeguard the public while performing such franchise activities, is legally nondelegable, and the franchise holder is therefore

responsible for the conduct of those whom it permits to act under its franchise, even though such persons be independent contractors. See also Stickel v. Erie Motor Freight Co., 54 Ohio App. 74, 6 N.E.2d 15; Emerson v. Park, Tex.Civ.App., 84 S.W. 2d 1100, and Liberty, etc., v. Callahan, 24 Ohio App. 374, 157 N.E. 708, 709.

■ It is quite true that under the doctrine of Erie, etc., v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, this question is to be determined by Virginia law, and no Virginia case directly in point has been cited to me, nor do I find any.[1] However, I conclude, as did Judge Goodrich in the case of Venuto, etc., v. Robinson, etc., supra, that in the absence of direct local authority, it seems proper to rely upon the "Restatement of the Law of Torts" as evidence of the law of this state; and besides, there are Virginia cases recognizing exceptions to the general doctrine of non-liability of an employer for the acts of an independent contractor.

In the case of Bowers v. Town of Martinsville, 156 Va. 497, 159 S.E. 196, it was held that the employer of an independent contractor was liable for the negligence of such independent contractor, the work entrusted to the independent contractor being hazardous. The following language appears in Head Note 9, of 156 Va. at page 499, 159 S.E. at page 196: "But a positive duty rested on the contractor to see to it that the banks of the canal on which the bridge was erected should not be damaged, and this duty was a non-delegable duty of which the contractor could not relieve himself by the employment of an independent contractor, and, therefore, though the subcontractor was an independent contractor, the contractor remained liable for any negligence of the subcontractor in failing to use proper care * * *."

Although not directly in point, also see Richmond, etc., v. Moore's Adm'r, 94 Va.

---

[1] However, the fact that this question of state law has not yet been determined by the Virginia court of last resort does not relieve this Court from the duty of passing upon it. See Meredith et al. v. City of Winter Haven, 64 S.Ct. 7, 12, 87 L.Ed. ——, (decided November 8, 1943), wherein the Chief Justice, speaking for the Court, said: "Erie v. Tompkins, supra, did not free the federal courts from the duty of deciding questions of state law in diversity cases. Instead it placed on them a greater responsibility for determining and applying state laws in all cases within their jurisdiction in which federal law does not govern. Accepting this responsibility, as was its duty, this Court has not hesitated to decide questions of state law when necessary for the disposition of a case brought to it for decision, although the highest court of the state had not answered them, the answers were difficult, and the character of the answers which the highest state courts might ultimately give remained uncertain."

492

493, at page 506, 27 S.E. 70, 37 L.R.A. 258, and Epperson v. De Jarnette, 164 Va. 482, 487, 180 S.E. 412, et seq.

And upon the question of the risk of harm to others resulting from the transportation of freight upon the highways by motor truck, the Supreme Court of Appeals of Virginia has expressed itself rather vigorously. In considering a case involving the negligent operation of a freight truck upon the highways of this Commonwealth, the Court said: "These trucks, sometimes inordinate in size, measurably monopolize our highways and add to the peril of their use, and it is in the light of their potential destructiveness that a high degree of care is but ordinary care. Boggs v. Plybon, 157 Va. 30, 160 S.E. 77. Automobiles may not be in themselves dangerous instrumentalities but freight cars which operate along the public highway, intended for the common use of all the people, are." Aronovitch v. Ayres, 169 Va. 308, 318, 193 S.E. 524, 526.

Counsel for Jocie contends very vigorously that, even though the doctrine set out above be sound, it should not be applied in this instance because at the time of the accident, Gilmore, operator of Jocie's truck, had completed his mission and was returning with an empty truck. This contention seems to me to be patently unsound. It seems to me that if, under the circumstances here presented, Jocie, the franchise holder, is to be held responsible for the operation of Johnson's truck on this mission, under Jocie's franchise, it would be absurd to say that this responsibility should attach while the truck is proceeding on its journey loaded, and should not attach on the return journey while empty. Both the journey to Roanoke, and the return journey to Charlotte, are necessary parts of the same trip, and the whole trip was undertaken, and was being made, under the authority of Jocie's franchise.

The parties have agreed that Gilmore was negligent as alleged, and that the injuries complained of resulted from such negligence, and having also agreed upon the amounts to be awarded each plaintiff, and the jury having returned a verdict carrying out the terms of such agreement, it follows that an order will be entered rendering judgment, not only against Gilmore, but against both Johnson and Jocie, jointly and severally, for the damages found in the jury's verdict.