ZIMMERMAN et al. v. MATHEWS TRUCKING CORP..

Civ. 472.

United States District Court
W. D. Arkansas, Hot Springs Division.

June 4, 1952.

**58**

G. W. Lookadoo, John H. Lookadoo, Arkadelphia, Ark., for plaintiff. ·

J. W. Barron. Little Rock, Ark., Eugene A. Matthews, Hot Springs, Ark., for defendant.

**JOHN E. MILLER, District Judge.**

Defendant has filed a motion under Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A. for judgment in accordance with its motion for a directed verdict made at the close of the evidence in the trial of the above named case, and in the alternative for a new trial. The respective parties have filed briefs on the, motion, and the court has considered the pleadings, the evidence and the briefs in support of and in opposition to the motion.

This cause of action arose out of a collision between an automobile driven by the plaintiff and occupied by his wife, who was killed in the collision, and an unattached tractor, commonly used to pull large trailers in the transportation of merchandise, owned by Marion Coscia and being driven by Jack Anderson. Coscia was riding in the tractor at the time of the collision. The defendant admitted that the collision and the resulting injuries to plaintiff and the death of his wife were proximately caused by the negligence of Jack Anderson, an employee of Coscia, but defended the claims asserted by plaintiff on the ground that it was in no wise legally responsible or liable for the acts of the said Anderson and Coscia.

An exhaustive review of the evidence, a large portion of which was in the form of depositions, is not necessary. However, viewed in the light most favorable to the plaintiff, the following facts appear:

The defendant was engaged in the business of hauling freight in interstate commerce and in furtherance of that business operated a terminal at Memphis, Tennessee. It followed the practice of entering into various lease arrangements with truckers who owned their own equipment. In the past it has entered into so-called "spot lease" agreements with Marion Coscia for the transportation by the latter of a single load. Coscia, as well as other truckers similarly situated, operated independently and hauled freight for various transportation concerns. The customary freight division provided for in the "form" spot lease was 70% to the trucker, such as Coscia, and 30% for the transportation company, although Coscia testified that in the past he had received as much as 80% on special occasions. The lease haulers, such as Coscia, did not have Interstate Commerce Commission certificates, and while they were on trips under lease with the defendant they were furnished the certificate that had been issued to defendant. As to the particular transaction herein involved, it is admitted that some time prior to March 16, 1951, Coscia hauled a load for another company into the State of Texas and because of some infringement of the laws of that State certain officials thereof attached and took Coscia's trailer into custody. The testimony is legally sufficient to justify a finding that on March 16, 1951, Coscia entered into an oral agreement with Lee Staley, terminal manager of the defendant at Memphis, under which Coscia was to go to Texas, pick up his trailer, return with it to Memphis, and there load and transport to some point in New Jersey or New York a shipment of oleo, for which transportation Coscia was to receive 75% of the freight instead of the usual 70%, the

additional 5% going to defray his expenses to Texas to obtain his trailer. The oleo was to be held by defendant at Memphis pending Coscia's return on Sunday, March 18, and representatives of defendant were to be present at that time to load the oleo onto Coscia's trailer. Pursuant thereto, Coscia and Jack Anderson, whom he had hired to make the trip with him, departed from Memphis about 5:00 or 6:00 p. m., Friday, March 16, for Texas. It is undisputed that the defendant gave no directions to Coscia as to the manner of making the trip to Texas, and Coscia was to pay all expenses, including the wage of Anderson, his driver. While en route the collision out of which the lawsuit arose occurred.

■ The defendant denied the making of any such oral agreement, and offered evidence which, if believed by the jury, would have supported a verdict in its behalf. However, the jury, under the court's instructions, resolved the above factual issues in favor of the plaintiff, and the court cannot say that there is no substantial evidence to support the jury's finding that such an agreement, as outlined above, did in fact exist. The court had serious misgivings as to the legal consequences of such an agreement at the time of the trial and so advised the parties, and the motion now before the court has given it an opportunity for further deliberation and study of the legal principles that must be applied to the testimony viewed most favorably for the plaintiff.

■ At the trial the plaintiff contended that the relationship of master and servant or principal and agent existed between defendant and Coscia and Anderson at the time of the collision. The court rejected this contention at the trial, being of the opinion that if any relationship existed, it, at best, was that of principal and independent contractor. The court still entertains that opinion, and while the plaintiff in his brief in opposition to the motion for judgment notwithstanding the verdict does not expressly abandon his former contention that the relationship between Coscia and the defendant was that of master and servant he does vigorously contend that Coscia

was operating under the franchise of the defendant and that, therefore, the defendant is liable for the negligence of Coscia and his employee. The facts, under the most favorable view to plaintiff fail to present a question of fact for the jury on the contention that the relationship of master and servant existed. It is obvious that at most the only control or the right thereof retained by the defendant in this case was as to the result, with the means and methods for the accomplishment of that result being left entirely to Coscia and his employee. For Arkansas cases see among others: Moaten v. Columbia Cotton Oil Company, 193 Ark. 97, 97 S.W.2d 629; Arkansas Fuel Oil Co. v. Scaletta, 200 Ark. 645, 140 S.W. 2d 684; Rice v. Sheppard, 205 Ark. 193, 168 S.W.2d 198; Ozan Lumber Co. v. McNeely, 214 Ark. 657, 217 S.W.2d 341, 8 A.L.R.2d 261. And, it has been universally held that a spot lease hauler is an independent contractor. See: Hodges v. Johnson, D.C.W.D.Va., 52 F.Supp. 488; War Emergency Co-op. Ass'n v. Widenhouse, 4 Cir., 169 F.2d 403; Costello v. Smith, 2 Cir., 179 F.2d 715, 16 A.L.R.2d 954. While Coscia had not in fact executed such a lease at the time of the collision, one was to be executed if and when he returned from Texas with his trailer.

■ It follows from this conclusion, that if defendant is to be held liable it must be under an exception to the usual rule of nonliability for the acts of an independent contractor. One such exception exists in the case of a person or corporation operating under a public franchise, whereby the duty owed the public by one so operating cannot be delegated to an independent contractor so as to relieve the former of liability to third persons for the negligent acts of the latter. As expressed in Costello v. Smith, supra, 179 F.2d at page 717:

> "This is on the principle that one who can lawfully operate only under a public franchise cannot escape liability by engaging an independent contractor to carry on the activity for him. Restatement, Torts, § 428. It is an exception to the independent contractor rule."

Restatement of Torts, Sec. 428 provides:

"An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."

And, as stated in 57 C.J.S., Master and Servant, § 591, p. 368:

"An individual or a corporation cannot evade liability for negligence by delegating performance of work to an independent contractor where such individual or corporation is carrying on an activity, involving danger to others, under a license or franchise granted by public authority and subject to certain obligations or liabilities imposed by public authority."

As above stated, the court, with some misgiving, submitted the case to the jury under this principle, and in addition to the usual instructions on burden of proof, credibility of witnesses, and damages, instructed the jury as set forth in the footnote.[1] Under the instructions, the jury found the issues in favor of the plaintiff and returned a verdict fixing the damages of plaintiff, individually, at $23,915 and as husband and next of kin of his deceased wife at $25,600.

Defendant moved for a directed verdict at the close of the plaintiff's evidence and again at the close of all the evidence, which motions were overruled by the court. As grounds for its motion for a directed verdict at the close of the evidence, the defendant asserted (1) that the undisputed evidence showed Cosca was not an agent, servant or employee of defendant, but rather was an independent contractor, (2) that the undisputed evidence showed that there was no contract between the defend-

---

[1] "3

"The plaintiff contends that the said Coscia and his employee, Jack W. Anderson, were traveling from Memphis, Tennessee, to Fort Worth, Texas, under and by virtue of an agreement entered into between the said Coscia and the authorized representative of the defendant whereby the said Coscia was to go to Fort Worth, Texas, and procure and return his trailer to Memphis, Tennessee, for the purpose of loading a quantity of oleo in said trailer and for delivery by the said Coscia for the defendant to a consignee of said oleo in the state of New Jersey or New York, and that the said shipment of oleo would be held by the defendant at or near its terminal in Memphis, Tennessee, for a reasonable time to permit the said Coscia to obtain and return the trailer for the purpose of loading the oleo, and that he, Coscia, was to receive an extra allowance of 5% of the freight to cover his expenses in making the trip to Fort Worth and return.

"If you find from a preponderance of the evidence that on March 16, 1951, it was agreed between the said Coscia and R. L. Staley, the terminal manager of the defendant at Memphis, Tennessee, that the said Coscia would transport for the defendant from Memphis, Tennessee, to the state of New Jersey or New York the said oleo and that it was un-

derstood and agreed between said parties that the said Coscia, as a part of the agreement, should go to Fort Worth, Texas, and return his trailer to Memphis, and that as a consideration the defendant would allow the said Coscia an additional 5% of the freight charges to reimburse him for his expenses in going to Fort Worth and returning to Memphis and that the said Coscia was en route to Fort Worth pursuant to and in accordance with such agreement at the time of the collision with the plaintiff's automobile, then the defendant would be liable, and you will find the issues in favor of the plaintiff.

\* \* \* \* \*

"5

"If you find from the evidence that Coscia did not undertake to go from Memphis to Fort Worth pursuant to and in accordance with such an agreement with the defendant, but undertook to make the trip to Fort Worth to obtain his trailer and return it to Memphis with the hope or expectation of entering into a contract or spot lease with the defendant upon his return for the transportation of freight for the defendant, or find that the agreement, if any, was conditional upon Coscia returning to Memphis in time to haul the oleo, then you will find the issues in favor of the defendant."

ant and Coscia which would give rise to any relationship upon the basis of which defendant would be liable for the negligence of Coscia or his employee, Jack Anderson, and (3) that plaintiff has failed to discharge his burden to show such a relationship between Coscia and defendant as would charge the latter with the negligence of the former, and it is undisputed that the alleged agreement in question was completely beyond the scope of the authority of the defendant's agents.

In its motion for judgment in accordance with motion for directed verdict, defendant asserts (1) plaintiff's evidence was insufficient in law, (2) all the evidence is insufficient in law to justify the verdict, (3) the verdicts are contrary to the evidence, (4) the verdicts are contrary to law, (5) under all the evidence Coscia was making the trip to Fort Worth for his own account and as an independent contractor, (6) under all the evidence Coscia was not making the trip to Fort Worth as a part of any contract with the defendant to haul freight for defendant on his return, (7) under all the evidence the so-called contract of Coscia with defendant was conditional and his right to haul oleo and to earn any compensation therefor was likewise conditional and said condition, to return to Memphis by Sunday, was never performed, (8) under all the evidence it was beyond the authority of defendant's manager Staley to make the alleged contract, and (9) the grounds of the motion for a directed verdict are incorporated by reference.

As grounds for its motion for a new trial, which is prayed for in the alternative, defendant asserts that the verdicts are contrary to the evidence and the law; that the evidence is insufficient; that the court erred in admitting certain testimony over the objection of defendant (which need not be set forth here); that the court erred in refusing defendant's oral request for a directed verdict at the close of plaintiff's evidence and at the close of all the evidence; that the court erred in refusing certain enumerated requests for instructions (which need not be set forth); that the court erred in giving its own instruc-

tions Nos. 1, 3, 4, 5 and 6; and that the verdicts are excessive and the result of passion and prejudice.

Even though the motions are made in the alternative it is the duty of the court to pass on both. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147. And, since the court is of the opinion that if the theory upon which the case was submitted to the jury is in accordance with the governing substantive law the verdicts should stand, the motion for a new trial should be overruled, and such an order will be entered. In so holding, the court feels that its rulings upon the admissibility of testimony are correct; that, assuming the soundness of the governing legal principles which will be examined subsequently, the instructions are correct; that there is substantial evidence to support the findings of the jury under the instructions; and that the verdicts are not excessive nor the result of passion and prejudice. And, in so ruling, the court is fully cognizant of its duty to set aside a verdict which, in its opinion, is against the clear weight of the evidence even though there be substantial evidence which would prevent the direction of a verdict. Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350; Montgomery Ward & Company v. Duncan, supra; Charles v. Norfolk & Western Ry. Co., 7 Cir., 188 F.2d 691.

Turning now to the motion for a directed verdict and the motion for judgment in accordance with the motion for a directed verdict, the existence of the contract as found by the jury is accepted, there being substantial evidence to support that finding. The decision of the court to submit the case to the jury, reached at the trial under conditions precluding opportunity for careful research and study, was based upon the following reasoning. It was felt that to confine the scope of the "operation under a public franchise" exception to the time during which a load was actually in the process of delivery would unduly confine the doctrine and would tend to defeat the public purpose and benefit serving as a foundation for the doctrine. This was the view of District Judge Barks-

dale in Hodges v. Johnson, D.C.W.D.Va., 52 F.Supp. 488, at page 492, wherein he stated:

"Counsel for Jocie contends very vigorously that, even though the doctrine set out above be sound, it should not be applied in this instance because at the time of the accident, Gilmore, operator of Jocie's truck, had completed his mission and was returning with an empty truck. This contention seems to me to be patently unsound. It seems to me that if, under the circumstances here presented, Jocie, the franchise holder, is to be held responsible for the operation of Johnson's truck on this mission, under Jocie's franchise, it would be absurd to say that this responsibility should attach while the truck is proceeding on its journey loaded, and should not attach on the return journey while empty. Both the journey to Roanoke, and the return journey to Charlotte, are necessary parts of the same trip, and the whole trip was undertaken, and was being made, under the authority of Jocie's franchise."

And, although it refused to follow this view of Judge Barksdale the court in Costello v. Smith, supra, seemingly based its decision upon this point on the conclusion that after the load had been delivered the contract and the need for the franchise was at an end and the trucker was no longer on the business of the defendant, stating in this regard, 179 F.2d at page 717:

"Here the independent contractor, Withers, had performed his contract with Johnson, the truck had been redelivered to Withers' agent Smith, and in returning to Charlotte, N. C., Smith was engaged on Withers' business, not on Johnson's. On general principles of agency Smith's negligence cannot be imputed to Johnson."

Thus, it was the reasoning of the court at the time of the trial that if there was one contract, of which the transportation was an integral part, Coscia would be on defendant's business on the entire trip,

to Fort Worth and return and then from Memphis to point of delivery in the East, the performance of a substantial portion of which had to be under defendant's public franchise. However, after further study, materially aided by the able briefs of the respective parties, the court has reached the conclusion that this reasoning is fallacious. If carried to its logical conclusion, it would extend the doctrine entirely beyond the reasons for its existence. Thus, so long as one, admittedly an independent contractor, was on any business of a defendant, who was operating under a public franchise, the defendant would be liable for his acts, even though such acts were of such a nature as not to require the one performing them to have authority given by a franchise. Certainly, a franchise was not necessary for the trip from Memphis to Fort Worth in a tractor with no trailer attached, whether that trip was entirely private or under a contract, as here, with defendant. Under the terms of the contract as testified to and found by the jury, Coscia's return to Memphis by Sunday was a necessary condition precedent to his getting the load of oleo for delivery. This is strengthened by the fact that no lease was entered into and none was contemplated until Coscia's return in time to deliver the oleo. Obviously the defendant could not hold the oleo for an indefinite period. As asserted by defendant, the most liberal interpretation that can be given the contract is that it was a contract to deliver certain goods and necessarily conditional on Coscia's returning to Memphis within the specified time. Coscia was not paid a wage, salary or an amount to cover expenses on the trip to Fort Worth, but if he returned in time and actually transported the oleo, he would receive an additional 5% to apply on his expenses incurred on the Fort Worth trip. Under the facts disclosed by the testimony, the court feels compelled to conclude that the exception to the rule of nonliability of a principal for the acts of an independent contractor upon which the case was submitted to the jury is not applicable. Coscia was doing nothing, for himself or for the defendant, at the time of the colli-

sion which required a public franchise for the performance thereof.

In this respect this case is distinguishable from Hodges v. Johnson, supra, for there the franchise was necessary for the transportation to the point of delivery, and when that trip was made solely under the public authorization granted to defendant, it, in the opinion of the court, is not unduly harsh to continue the responsibility of defendant for the trucker's acts until the completion of the return trip, so long as the return is direct and there is no deviation by the trucker for the furtherance of his own business, such as proceeding to an out of the way destination for an additional load. In as much as the defendant was responsible for the trucker making the trip, and in as much as it is necessary for the trucker to return, the law might well extend the liability for the protection of the public to cover the return trip. However, in this case a contract of transportation was never entered into. Coscia did nothing for which a public franchise was necessary. It, at most, was simply the situation whereby a private trucker had an agreement to obtain a contract of transportation if he obtained his trailer and presented himself and equipment at the required time.

In so characterizing the contract, the court is not modifying the finding of the jury. Under that finding there was one contract, to go to Fort Worth and pick up the trailer and to deliver the goods upon the return to Memphis, and had Coscia returned, and the defendant for any reason had not permitted him to haul the oleo in all probability it would have been liable for damages for a breach of the contract. However, the contract was not a contract of transportation, complete in itself, and it was contemplated by all parties that the usual spot lease would be executed. Nothing was authorized or done that required a public franchise.

Concerning the requirement that the act be one which would not be done except for the franchise, 57 C.J.S., Master and Servant, § 591, p. 368, states:

"Corporations have been held liable for the wrongful act of an independent contractor while exercising, with the assent of the corporation, some chartered power or privilege of the corporation. However, it has been held that the liability is limited to wrongs done in the performance of acts which could not have been done except for the existence of the charter of the company. If the act is one which might have been done by an individual, no different rule obtains as to liability merely because the contractee is a corporation."

The collision occurred in Arkansas and, therefore, the law of this state governs. See: Leflar, Conflict of Laws, Arkansas, Sec. 76, p. 184, and cases cited therein. The court has found no Arkansas cases and none have been cited to it which are directly in point. However, Arkansas does recognize the public franchise exception to the rule of nonliability for the acts of independent contractors. St. Louis, Iron Mountain & Southern Railway Company v. Coutch, 111 Ark. 5, 162 S.W. 1103. And, Arkansas recognizes an exception to the general rule of nonliability in the case of work which is inherently dangerous to others. St. L., I. M. & So. Railway Co. v. Yonley, 53 Ark. 503, 507, 14 S.W. 800, 9 L.R.A. 604; Hammond Ranch Corporation v. Dodson, 199 Ark. 846, 136 S.W.2d 484; Giem v. Williams, Administratrix, 215 Ark. 705, 222 S.W.2d 800. The latter exception has not been urged in this case, and need not be discussed in detail, but the court is aware of no Arkansas decision holding that trucks, such as involved herein, are inherently dangerous. On the contrary, it has been recognized that they are not. See: Moaten v. Columbia Cotton Oil Co., supra. See, also, in this regard, Costello v. Smith, supra. As to the former exception, operation under a public franchise, the result reached herein by the court is in accord with the decisions of the various courts that have had occasion to deal with the exception, and the court is of the opinion that in so holding it may fairly be said to be applying the law of Arkansas.

Therefore, an order granting the motion of defendant for judgment in accordance with its motion for a directed verdict and an order overruling the motion for a new trial are being entered today.