## Staunton.

## London Brothers and Others v. National Exchange Bank of Roanoke, Virginia, and Others.

### September 20, 1917.

1. Assignments—*General Contractor—Mechanics' Liens.*—Section 2482-a, Code of 1904, provides that no assignment or transfer of any debt ·due or to become due to a general contractor by the owner for the construction or repairing of any structure for such owner, shall be valid until the claims of all subcontractors, supply men, etc., against such general contractor for labor and materials furnished in and about the construction of such structure shall have been satisfied.

    *Held:* .That the language of the act was too plain to need construction, and that its benefits could not be confined to subcontractors, material men, etc., who had perfected mechanics' liens, which in the case at bar it was admitted they could not have done because the owner of the building in question was a municipal corporation.

2. Assignments—*General Contractor—Mechanics' Liens.*—Section 2482-a, is not only simple and unambiguous in its language, but its purpose is lawful as well as laudable, and is plainly manifest. There is no ambiguity therein, whether considered as a separate and independent statute or in connection with the mechanics' lien statutes. Section 2482-a discourages the assignment by the general contractor of any part of the debt due or to become due him by the owner for the construction of the building, by providing that such assignment shall not be valid or enforceable in any court of law or equity by any legal process or in any other manner by the assignee of any such debt, unless and until, the claims of all subcontractors, supply men and laborers against such general contractor for labor performed and material furnished in and about the construction, erection and repairing of such building, shall have been satisfied.

3. Statutes—*Interpretation and Construction·*—All rules for the construction of statutes are subservient to the legislative intent; and when this is clear from the language used, rules of interpretation give way—the maxim being that it is not allow-

able to interpret that which has no need of interpretation. Furthermore, this intention is to be gathered from the words used unless a literal interpretation would lead to a manifest absurdity.

4. ASSIGNMENTS—*Mechanics' Liens—Section 2482-a, Code of 1904—Procedure.*—Section 2482-a, Code of 1904, completely protects the owner of the building, and the case at bar fully illustrates its effectiveness as a remedy for every interested party. All that the owner has to do in case such an assignment is made is to follow the example of the owner in the instant case—pay the money into court and convene the claimants of the fund, and relieve himself of all responsibility in connection therewith. If he does not know the claimants of the fund, then he can take advantage of the statute (section 3230 of the Code of 1904) which authorizes complainants who think that there may be persons who are interested in the subject whose names are unknown, to make them parties to the suit by the general description of "parties unknown," and on proper affidavit to have them convened by order of publication.

Appeal from a decree of the Law and Chancery Court of the city of Roanoke. Decree for complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*Johnston & Izard, Poindexter & Hopgood, Jas. A. Bear, Willis & Adams, A. P. Staples, A. B. Hunt, Spiller & Burks* and *Chas. T. Jesse,* for the appellants.

*Woods, Chitwood & Coxe, Jackson & Henson* and *S. H. Graves,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

The city of Roanoke filed its bill of interpleader, showing that it owed the sum of $20,999.20, the balance of the contract price for the municipal building constructed for it by

the King Lumber Company, as general contractor, and that the National Exchange Bank, as assignee of such general. contractor, its trustees in bankruptcy as well as appellants, subcontractors of the King Lumber Company who had furnished materials, labor or supplies in the construction of the said building, were all claimants of the fund, and prayed that it might be properly distributed under the direction of the court.

All of the defendants filed answers to the bill, and it appears that on the 22nd day of April, 1916, the King Lumber Company assigned $15,000 of the amount due for the construction of the building to the National Exchange Bank, without first having paid the laborers, supply men and subcontractors. These laborers, supply men and subcontractors claim under the act entitled, "An act to protect subcontractors, supply men and laborers" (Acts 1895-6, p. 379, printed in Pollard's Code as sec. 2482-a), that such assignment cannot be enforced until their claims have been fully satisfied. This act reads as follows:

"No assignment or transfer of any debt, or any part thereof, due or to become due to a general contractor by the owner for the construction, erection, or repairing of any building, structure, or railroad for such owner shall be valid or enforceable in any court of law or equity by any legal process or in any other manner by the assignee of any such debt unless and until the claims of all subcontractors, supply men, and laborers against such general contractor for labor performed and materials furnished in and about the construction, erection, and repairing of such building, structure, or railroad shall have been satisfied; provided, that if such subcontractors, supply men, and laborers shall give their assent in writing to such assignment it shall be thereby made valid as to them, but the pay-

ment or appropriation of such assignment by the owner without such assent in writing shall not protect such owner from the demands of such subcontractors, supply men, and laborers to the extent of such assignment.

"No debt or demand, or any part thereof, due or to become due by the owner of any building, structure, or railroad to a general contractor for the construction, erection, or repairing of such building, structure, or railroad shall be subject to the payment of any debt or the lien of any judgment, writ of *fieri facias* or any garnishee proceeding obtained or sued out upon any debt due such general contractor which shall have been contracted in any other manner or for any other purpose than in the construction, erection, or repairing of such building, structure, or railroad for such owner unless and until the claims due by such general contractor to all subcontractors, supply men, and laborers for materials furnished and labor performed in and about the construction, erection, or repairing of such building, structure or railroad shall have been paid."

It is contended for the bank that this act must be read and construed in connection with the mechanics' lien laws, sections 2475-2481 inclusive of the Code, and that if so read and construed it does not protect the petitioners because they had not perfected mechanics' liens, and it is admitted that they could not do so because the owner of the building, the city of Roanoke, is a municipal corporation.

In the view that we take of the case, it is unnecessary to notice the contention of the trustees in bankruptcy of the King Lumber Company, because they have no interest in the fund in any event. It may be noted further that it is suggested in the argument and is not denied that there has been a composition between the bankrupt and its creditors, and that its trustees have relinquished all claim to the fund involved.

The trial court, by two decrees entered on the same day, April 26, 1917, determined that the appellants, the laborers, supply men and subcontractors had no interest in the fund under its control, that the assignment to the bank was valid. as against the appellants, and decreed that it should be paid in full, with interest, out of the fund, and that the surplus should be paid to the trustees in bankruptcy of the King Lumber Company, and refused to suspend the entry of the decree for four days—that is, until the 30th of April, 1917, which was the date set for the consideration by the District Court of the United States for the Western District of Virginia of the offer of composition made by the bankrupt to its creditors—although it appeared that if the composition should be confirmed the trustees in bankruptcy would relinquish all claim to this fund; and from these decrees this appeal is taken.

In their effort to sustain these decrees, counsel for the bank exhibit the greatest industry, learning and ability in the discussion of the rules for construction of statutes in which there are ambiguities, latent or patent. In our view, however, it is unnecessary for us to refer to all of these rules, because we are of opinion that the statute, section 2482-a, is not only simple and unambiguous in its language, but that its purpose is lawful as well as laudable, and is plainly manifest. There is no ambiguity therein, whether considered as a separate and independent statute or in connection with the mechanics' lien statutes.

It is claimed that in order to harmonize the statutes we should interpolate into this act, after the words, "until the claims of all subcontractors," the additional words, "who shall have perfected mechanics' liens in accordance with the provisions of the Code."

The effect of such an interpolation would be so to change the meaning of the statute as to defeat its manifest purpose.

For many years it has been the wise and just policy of this State to require that the laborers and supply men whose work and material create the fund arising from the construction of buildings, shall be paid out of the said fund in preference to the general contractor. Pursuant to this policy the mechanics' lien laws create and provide for the perfection and enforcement of liens upon the building or structure and so much land therewith as may be necessary for the convenient enjoyment of the premises. Section 2479 of the Code further provides, that upon giving notice in writing to the owner of the building, the subcontractor may make the owner personally liable to him. None of these provisions are in conflict with section 2482-a here involved. That section was enacted pursuant to the settled policy of the state and as a further protection to those claimants who are so favored by the law because their labor and property have produced the value. There is no conflict whatever between these statutes, and construed together they create no ambiguity, but simply deal with different phases of the same subject.

Section 2482-a discourages the assignment by the general contractor of any part of the debt due or to become due him by the owner for the construction of the building, by providing that such assignment shall not be valid or enforceable in any court of law or equity by any legal process or in any other manner by the assignee of any such debt, unless and until the claims of all subcontractors, supply men and laborers against such general contractor for labor performed and material furnished in and about the construction, erection and repairing of such building shall have been satisfied. Such language as this is too plain to need construction. The statute says simply what it means, and therefore simply means just what it says. To attempt to expound tends to becloud instead of to elucidate its mean-

ing. The words of the statute are written into such assignments as effectually as if the assignment in terms stated as a condition precedent that it should be void and ineffective until after the payment in full of all debts due by the assignor to subcontractors, supply men and laborers for the construction of the building, and in its legal effect is a direction to the owner thus to distribute the fund.

In *Floyd, Tr.* v. *Harding*, 28 Gratt. (68 Va.) 405, Staples, J., said this: "While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed. The authorities in support of this principle are almost innumerable. It is unnecessary to cite them, as they may be found in Dwarris on Statutes, 181-4, 209; 2, 204-5, 208."

These recent cases are to the same effect: *Shenandoah Lime Co.* v. *Governor*, 115 Va. 870, 80 S. E. 753, Ann. Cas. 1915 C, 973; *Kain* v. *Ashworth*, 119 Va. 605, 89 S. E. 857; *Saville* v. *Va. Ry. & Power Co.*, 114 Va. 444, 76 S. E. 954; *Caminetti* v. *United States*, 242 U. S. 470, 37 Sup. Ct. 192, 61 L. Ed. 442, Ann. Cas. 1917 B, 1168; *United States* v. *Lexington, etc., Elevator Co.*, 232 U. S. 409, 34 Sup. Ct. 337, 58 L. Ed. 662, L. R. A. 1915 B, 774.

In Lile's Notes on Statutes, p. 24, it is said: "All rules are, therefore, subservient to the legislative intent; and when this is clear from the language used, rules of interpretation give way—the maxim being that it is not allowable to interpret that which has no need of interpretation. Furthermore, this intention is to be gathered from the

words used unless a literal interpretation would lead to a manifest absurdity.".

Counsel for the bank fully recognize this rule but argue that to construe the words of this statute in accordance with their literal meaning does lead to confusion and manifest absurdity. We do not think it necessary to discuss the several remote possibilities which are suggested, but which clearly do not result in this case from a literal interpretation of the statute. This suit is itself a sufficient answer to every such suggestion. It completely protects the owner of the building, and fully illustrates its effectiveness as a remedy for every interested party. All that the owner has to do in case such an assignment is made is to follow the example of this owner—pay the money into court and convene the claimants of the fund, and relieve himself of all responsibility in connection therewith. If he does not know the claimants of the fund, then he can take advantage of the statute (section 3230 of the Code) which authorizes complainants who think that there may be persons who are interested in the subject whose names are unknown, to make them parties to the suit by the general description of "parties unknown," and on proper affidavit to have them convened by order of publication.

The statute, section 2482-a, was enacted twenty years ago, it has received from learned commentators the same construction which has been here put upon it, and no such dire results as counsel fear have ensued. While its wisdom has been doubted by some, until now, so far as we are informed, its meaning has not been questioned.

We have no doubt whatever as to the proper construction of this statute, nor of the power of the legislature to enact it.

The trial court erred in decreeing that the assignment to the bank had priority. The decree should have required

the parties to prove their claims and then the fund should have been distributed, first to the payment of the debts due to the appellants, and then the surplus should have been applied to the partial payment of the debt due the bank.

The decrees will be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Decrees Reversed.*