## Richmond

### GEORGE VOLLIN, JR., ET AL. v. ARLINGTON COUNTY ELECTORAL BOARD AND CORNELIA B. ROSE.

March 5, 1976.

Record No. 741174.

Present, All the Justices.

*Sherman W. Pratt*, for plaintiff in error.

*Lawrence J. Latto* [D.C.], for defendant in error Cornelia B. Rose.

(*Charles G. Flinn, Assistant County Attorney*, for defendant in error Arlington County Electoral Board.)

HARRISON, J., delivered the opinion of the court.

George Vollin, Jr. and more than two hundred other qualified voters in Arlington filed their petition in the court below, pursuant to Code § 15.1-694, requesting the court to open a poll and "take the sense of the qualified voters of the county on the question of whether they desire the form of government, or organization of government, of Arlington County changed to provide that the governing body members be elected from magisterial districts, rather than at large as at present". Following a hearing, at which counsel for all parties appeared, the court concluded that "Section 15.1-694 is a provision available only to Virginia Counties which meet the standards of Section 15.1-694 and have not previously adopted either the Modified Commission Plan or County Manager Plan of government", and therefore denied the petition.[1]

Vollin says that the question is whether § 15.1-694[2] means "what it clearly says, and whether it is still applicable to Arlington County

---

[1] Cornelia B. Rose, a resident of Arlington County, was permitted by the lower court to intervene in opposition to the petition filed by Vollin, et als., and her counsel was allowed to file a brief on her behalf and to make an oral presentation. In the lower court counsel for both the intervenor and the Arlington County Electoral Board appeared in opposition to the petition. On appeal, however, no appearance was made on behalf of the Electoral Board. The County Board of Arlington, which is the county's governing body, having been advised of the pendency of this appeal, agreed that the County Attorney would, if necessary, file a brief on behalf of the County Board as *amicus curiae*, seeking an affirmation of the decision of the lower court. However, the County Attorney concluded that he could add nothing substantial to the brief submitted by counsel for Rose.

[2] Code § 15.1-694, which concerns form of ballot, conduct of election, election, terms and salary of board, provides, in pertinent part:

"Whenever two hundred or more qualified voters in any such county shall petition the circuit court for the purpose, such court shall by order entered of record in accordance with § 24.1-165 require the judges of election, on the day fixed in the order to open a poll and take the sense of the qualified voters of the county on the questions submitted as hereinafter provided for. In the calling and holding of such election, the same procedure shall be followed as is provided in § 15.1-584, except that the ballot shall have written or printed thereon the following:

"Question 1. Shall the county change its form of government?
"☐ Yes
"☐ No
"Question 2. In the event of such change, which form of government shall be adopted?
"☐ Modified commission plan
   or
"☐ County manager plan
"Question 3. In the event of such change, shall the governing board be elected at large or by districts?
"☐ At large
"☐ By districts
"Voting shall be in accordance with the provisions of § 24.1-165.

when there is no express language to indicate that it is not". He contends that the statute allows the court no discretionary alternative, and that whenever two hundred or more qualified voters petition the court to do so, it *shall* order the election officials to submit the issues to the voters.

■ We had occasion in *Henrico* v. *City of Richmond,* 177 Va. 754, 15 S. E. 2d 309 (1941), to comment on the genesis of Code § 15.1-694. There it was pointed out that the Acts of 1930, Ch. 167, p. 450 (Michie's Code of 1936, §§ 2773 (10)—2773 (23)), amended the Code of Virginia by adding thereto a new chapter, numbered 109-A, which permits any county in the state, having a population of five hundred inhabitants or more to the square mile, to adopt in a prescribed manner either the "modified commission plan" or the "county manager plan" of county government. We further said that the Act was designed to apply only to Arlington County, and noted that it had its origin in a bill which was introduced in the House of Delegates by the representative from that county. While the 1930 Act has been amended and reenacted from time to time, it (Code § 15.1-694) remains in large measure as it was when enacted on March 20, 1930.

Pursuant to the Act of 1930, and on the required petition, an election was held in Arlington and the voters selected the county manager plan of government, with county board members elected from the county at large. Prior to that time the county was governed by a body whose members were elected from magisterial districts. Since January 1, 1932, there have been no substantive changes in the organization or form of Arlington's government.

The position of appellees is that although Arlington is authorized by statute to change its form of government and adopt an alternative form, the change sought to be accomplished by Vollin cannot be effected pursuant to and under § 15.1-694 without additional enabling legislation.[3] They say that § 15.1-694, when enacted in 1930, was ob-

\* \* \* \* \*

"From and after the date on which the officers first elected under the provisions of this chapter shall take office, the form of government of such county shall be in accordance with the applicable provisions hereof."

. . . .

[3] In addition to the form of county government authorized by general law, it appears that in Virginia seven special forms of county government are authorized by statute. These are: a county executive and a county manager form (authorized by Chapter 13 of Title 15.1), a modified commission plan, a county manager plan, and a county board form (authorized by Chapter 14 of that Title), and an urban county executive form and an urban county manager form (authorized by Chapter 15 of that Title).

viously tailored for Arlington County; that it was enacted to give the people of that county an opportunity to replace their then existing form of government with either the modified commission plan or the county manager plan;[4] and that it was not designed for use by a county which had already adopted, and was currently operating under one of these two plans.

The statute requires that the voters answer three questions which are submitted to them in logical sequence. The first deals with whether the county should change its form of government. A vote "against" would be dispositive of all issues. In the event of an affirmative answer, the voter would proceed to the second question and make a choice between the two plans. The third question, concerning how the governing board is to be elected would, like the second question, be reached only in the event the voter desired a change in Arlington's government.

In the case under review, Vollin desires a change in the manner in which the governing board of Arlington County is elected and he is, therefore, primarily interested in the third question. However, in pursuit of his goal he invokes a statute which requires that all three questions be submitted to the voters. If this were permitted, confusion would result when the voter reached the second question, for the issue would not be a choice between the two plans, but whether the county should retain its present county manager plan or change to the modified commission plan. Further, a voter who did not wish a change in the existing county manager plan, but only wanted to change the manner in which Arlington's board was elected, would never reach that issue in an election now held under Code § 15.1-694, for the statute reads, "*In the event of such change* [in the form of government], shall the governing board be elected at large or by districts?" [Emphasis added]

We do attach significance to the fact that the General Assembly, in enacting § 15.1-584, whereby counties could adopt either the county executive *form* or the county manager *form* of government, provided the means whereby such a county could retain the form it had chosen or change to an alternative form. In § 15.1-589.1, it also authorized the

---

[4] Code § 15.1-669 provides that only those counties having a population of 500 inhabitants or more to the square mile and counties having less than 60 square miles of high land may adopt the two forms of county organization and government provided in Articles 2 and 3 of Chapter 14. While Arlington is the only county presently meeting the qualifications of this section, the possibility exists that as a result of population growth or annexation, other counties in Virginia might hereafter qualify.

governing body of any county which had adopted a county executive form of government to have a special election to determine whether the board of supervisors should be elected at large or from magisterial districts. However, no such provisions were made in § 15.1-694 for changing from one of the alternative *plans* of government to the other.

It is also noted that there is a limitation on the frequency with which elections can be held for the purpose of changing the forms of government selected and organized under the provisions of Chapters 13 and 15. No similar provision is included under Articles 2, 3 and 4 of Chapter 14. If Vollin's position is correct, the only limitation on the number and frequency of elections under Code § 15.1-694 is the willingness of at least two hundred people to sign a petition addressed to the court requesting an election.

■ We do not agree that the periodic amendment and reenactment of § 15.1-694 manifests an intention by the General Assembly to authorize Arlington to conduct repeated elections under that section. We have noted that none of the amendments subsequent to the original enactment of the statute were substantial in nature. We think it unlikely that the General Assembly has given serious consideration to the substance of the statute since 1930. Despite frequent redrafting, recodification and efforts to correct and simplify statutes, the complete elimination of all vague, contradictory, uncertain and obsolete provisions appears impossible.

Assuming that the referendum petitioned for by Vollin was ordered, and it was decided that the governing body be elected by districts, we are concerned with the status of the members of the existing board who have been duly elected and are presently serving fixed terms of office. Would their terms automatically expire? How should the new board be constituted? Presently one member of the Arlington County Board is elected each year for three out of four years and two members are elected in the fourth year as provided by § 15.1-676 (c). Counsel for appellees suggests that "[i]f the referendum provided in Section 15.1-694 were held again, even a board under the county manager plan elected at large in the same way as the present board would derive its authority from the new referendum and not from the old one and the application of Sections 15.1-674, 15.1-676, and 15.1-694 to determine the terms of the new board would be impossibly confusing".

■ Our decision here is controlled by the general principle that the ascertainment of legislative intent is the paramount object of statutory

construction. The plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction. It is the intention of the lawmaker that constitutes the law. The primary object in the interpretation of a statute is to ascertain and give effect to that intention, although the construction may not be in conformity with the strict letter of the law. *See* 17 M. J., Statutes, § 35, p. 284, and cases there cited. It has been said that legislative intent is to be gathered from words used in the statute unless a literal interpretation would lead to a manifest absurdity. *London Bros.* v. *National Exchange Bk.*, 121 Va. 460, 93 S. E. 699 (1917); *Kain* v. *Ashworth*, 119 Va. 605, 89 S. E. 857 (1916). The ascertainment of legislative intention involves appraisal of the subject matter, purposes, objects and effects of the statute, in addition to its express terms. *Newhart* v. *Pennybacker*, 120 W. Va. 774, 200 S. E. 350 (1938).

While there is language in Code § 15.1-694 that supports the position of appellants (specifically the word "Whenever"), we do not believe that it was intended that frequent and repeated referenda thereunder could be called in Arlington at the will of a mere two hundred of that county's voters. Code § 15.1-691 indicates that only one election was contemplated. That section deals with the election of the board by districts or at large, and reads in part: "Unless otherwise provided in the election hereinafter provided for, the members of the board shall be elected from the county at large and not by districts. Subject to the result of such election, the magisterial districts in such counties are hereby abolished for all purposes and thereafter the county shall be operated as a unit." The "election hereinafter provided for" was the election held in Arlington in 1931 under what is now § 15.1-694. That election resulted in a decision to select the governing body at large and not by districts. The effect of this was to abolish magisterial districts "for all purposes" and to provide that thereafter Arlington County be operated as a unit. Considering the two sections together, we conclude that the General Assembly intended that only one referendum be held by a qualifying county under § 15.1-694, at which time the voters would choose between the two plans and make their determination of the manner in which the governing board was to be elected. The only other election provided for in Article 3 of Chapter 14 is the one held under § 15.1-676, which enables Arlington to "stagger" the term of the members of its governing board, and such election is held "notwithstanding the provisions of . . . § 15.1-694".

Further, we cannot conceive of the statute being drafted in its pres-

ent form if it had been contemplated that more than one referendum was to be held by a county thereunder regarding the manner in which the governing body of that county was to be elected, or if it had been contemplated that a future referendum might be held to determine whether to substitute the alternate plan of government in place of the plan originally adopted.

Appellants refer to the issue involved in the case as "sensitive . . . with explosive political ramifications". While we do not concern ourselves with that phase of the controversy, we are of opinion that the solution to the problem raised by petitioners should come from the General Assembly of Virginia. Code § 15.1-694 does not readily lend itself to the construction for which appellants contend. The lower court would have created more problems than it would have solved by granting the prayer of the petitioners. Accordingly, its judgment is

*Affirmed.*