PRESENT: All the Justices

CITY OF CHARLOTTESVILLE, ET AL.

v. Record No. 200790

OPINION BY
JUSTICE S. BERNARD GOODWYN
April 1, 2021

FREDERICK W. PAYNE, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Richard E. Moore, Judge

In this appeal, we consider whether the circuit court erred in awarding declaratory relief, injunctive relief, and attorneys' fees pursuant to Code §§ 15.2-1812 and -1812.1.[1]

BACKGROUND

In 1918, the City of Charlottesville accepted a citizen's offer to donate land for a park in the city and to erect a statue of Robert E. Lee (Lee Statue) in that park (Lee Park). The next year, the City of Charlottesville accepted another offer from the same citizen to donate separate land for another park in the city and to erect a statue of Thomas J. "Stonewall" Jackson (Jackson Statue) in that park (Jackson Park). The Jackson Statue was erected in Jackson Park in 1921 and the Lee Statue was erected in Lee Park in 1924 (collectively, the Statues).

In February 2017, the Charlottesville City Council (the Council) approved resolutions to remove the Lee Statue from Lee Park, to rename and redesign Lee Park, and to support the renaming, redesign, and transformation of Jackson Park. The Council also directed staff to write and issue requests for proposals regarding redesigning both Lee Park and Jackson Park.

---

[1] The General Assembly amended Code §§ 15.2-1812, -1812.1, and relatedly 18.2-137, effective July 2020. However, unless otherwise noted, every reference to such statutes in this opinion refers to Code § 15.2-1812 (2010), Code § 15.2-1812.1 (2000), and Code § 18.2-137 (1999), which were in effect at the time this action was filed and litigated in the circuit court.

On March 20, 2017, before the Council and the City of Charlottesville acted in furtherance of the resolutions, Frederick W. Payne, John Bosley Yellott, Jr., Edward D. Tayloe, II, Betty Jane Franklin Phillips, Edward Bergen Fry, Virginia C. Amiss, Stefanie Marshall, Charles L. Weber, Jr., Lloyd Thomas Smith, Jr.,[2] Anthony M. Griffin, and Britton Franklin Earnest, Sr., (collectively, the Individual Plaintiffs), along with the Virginia Division of the Sons of Confederate Veterans, Inc., and The Monument Fund, Inc., (all together with the Individual Plaintiffs, the Plaintiffs) filed a complaint (the Original Complaint) in the Circuit Court of the City of Charlottesville. The Plaintiffs named, as the defendants, the City of Charlottesville, the Council, (together, the City) and the five individual members of the Council (the Council Members).[3] In the Original Complaint, it is alleged that the actions of the City violated Code § 15.2-1812 (1997), and Plaintiffs requested (1) that the resolutions passed by the Council relating to the Statues and the parks be declared void; (2) that the City be temporarily and permanently enjoined from removing the Lee Statue as well as from redesigning and renaming the parks; (3) recovery of monetary judgments against the Council Members; and (4) an award for costs and attorneys' fees. The City and the Council Members filed responsive pleadings including a demurrer. In the demurrer, the City argued that the Plaintiffs failed to state a cause of action for statutory violations because the statute that the City allegedly violated, Code § 15.2-1812, was not in existence at the time the Statues were erected. The City asserted

---

[2] Lloyd Thomas Smith, Jr., was one of the original plaintiffs, but he later passed away and, as such, is not a party to this appeal.

[3] The Council Members moved for summary judgment arguing that they were entitled to statutory immunity under Code § 15.2-1405. On July 8, 2019, the circuit court granted the summary judgment motion and dismissed the claims against the Council Members, ruling that the Council Members were entitled to immunity from the suit pursuant to Code § 15.2-1405. That ruling was not appealed and the Council Members are not parties to this appeal. They did, however, file an amicus brief in the present appeal.

that Code § 15.2-1812, which was enacted in 1997, had no retroactive applicability and did not apply to statues erected by independent cities prior to 1997.

On August 24, 2017, the City placed black tarp coverings (the tarps) over the Statues. The City took this action pursuant to a previously approved motion directing that the Statues be covered with black fabric, in mourning for the lives lost in Charlottesville during the so-called "Unite the Right" rally and associated protests regarding the Statues, which occurred during the weekend of August 12, 2017.

Subsequently, on September 5, 2017, the Council approved a resolution to remove both Statues from their respective parks as soon as possible "pending [] the successful resolution of the current court case in favor of the City."

On October 3, 2017, in ruling on the demurrer, the circuit court concluded that Code § 15.2-1812, passed by the General Assembly in 1997, was applicable regarding the Lee and Jackson Statues that were erected in the 1920s. The circuit court noted that Code § 15.2-1812, along with Code §§ 15.2-1812.1 and 18.2-137, gave protection to memorials and monuments to several past wars, with the earliest being the Algonquin War which occurred in 1622. Acknowledging that a "strictly technical reading of the statute and its legislative history" could lead to a different conclusion, and that the Circuit Court of the City of Danville and an opinion of the Attorney General of the Commonwealth had reached that contrary conclusion, the circuit court explained that, in its view, the General Assembly must have intended all of the previously erected statues to the wars and conflicts enumerated in Code § 15.2-1812 to be protected by the prohibitions stated in Code § 15.2-1812. Observing that if the statute was given its strictly technical reading, there would still be no prohibition on localities, other than counties, moving, disturbing, or interfering with monuments and memorials erected prior to the passage of

3

Code § 15.2-1812, the circuit court viewed such a result as absurd, because "the General Assembly had to have had in mind those monuments and memorials already erected," which the circuit court believed would far outnumber the prospective monuments and memorials that might be dedicated to wars that took place long ago.

Subsequently, on February 19, 2018, the Plaintiffs filed a Revised Second Amended Complaint.[4] The Revised Second Amended Complaint alleged that Payne, Yellott, Tayloe, and Amiss are residents of Charlottesville who all pay personal property taxes, and that some of them also pay real estate taxes. It stated that Phillips is a "collateral descendant" of the citizen who donated the land and the Statues and that she represents the interests of the family. The Revised Second Amended Complaint asserted that Fry is the great-nephew of the sculptor who created the Lee Statue and that he has "an interest in protecting the Lee [Statue] on account of his ancestral connection to the sculptor." It stated that Marshall is the chairman of the Monument Fund and "personally expended money and effort in cleaning and removing graffiti from the Lee [Statue] in 2011 and 2015." As for the last individual plaintiff, Weber, the Revised Amended Second Complaint stated that Weber pays real estate and personal property taxes in Charlottesville, and that he "has a special interest in the protection and preservation of war memorials and monuments" because he is a veteran.

---

[4] As the name "Revised Second Amended Complaint" implies, other complaints preceded it. That procedural history is not particularly relevant to the issues before us today, but will be recounted briefly to provide context. After Plaintiffs filed the Original Complaint, the City filed a demurrer on April 7, 2017. The circuit court, after holding a hearing, sustained the demurrer in part, overruled it in part, and granted Plaintiffs leave to amend. On October 11, 2017, Plaintiffs filed an Amended Complaint. The City filed a demurrer in response to the Amended Complaint, which the circuit court overruled in part and sustained in part. On April 25, 2018, Plaintiffs filed their second motion to amend, asking for leave to file a Second Amended Complaint. On November 17, 2018, the circuit court issued a letter opinion granting the Plaintiffs leave to amend their complaint in part, and overruling it in part; thereafter, the Second Amended Complaint was filed.

In their Revised Second Amended Complaint, the Plaintiffs alleged that the Statues were protected by the provisions of Code § 15.2-1812 and relatedly, Code § 18.2-137, that the actions of the City concerning moving or covering the Statues constituted statutory violations, and that the acts of the City in that regard were ultra vires. The Plaintiffs also alleged violations of the terms of the gifts that conveyed the parks and the Statues to the City.[5]

Concerning their statutory violations claim, the Plaintiffs asserted that the City's resolutions approving the removal of the Lee Statue and then the covering of the Statues with tarps were in "direct violation" of Code §§ 15.2-1812 and 18.2-137. The Plaintiffs alleged that the City "acted in a grossly negligent, reckless, willful, wanton and intentional manner, and are thus subject to punitive damages," and the Plaintiffs requested litigation costs as well as attorneys' fees pursuant to Code § 15.2-1812.1 because of the statutory violations. [6]

In a separate count, the Plaintiffs alleged that the actions by the City and the Council Members were outside of the scope of their powers and thus ultra vires because the City and the Council Members had no authority to remove or cover the Statues, rename the parks, or redesign the parks in violation of Code § 15.2-1812. The Plaintiffs alleged that these actions "resulted in unauthorized City expenditures, and Plaintiffs are entitled to require reimbursement to the City of all such expenditures, including but not limited to the initial cost of the [tarps] themselves as

---

[5] The circuit court eventually dismissed this claim with prejudice because it concluded that there is no language in the deeds prohibiting the City from renaming, redesigning, repurposing, modifying, or transforming the parks or moving the Statues. This ruling was not appealed, and this count is not relevant to the present appeal.

[6] Code § 15.2-1812.1 provides for a civil cause of action based upon violation of Code § 15.2-1812, and the payment of damages and litigation costs, including attorneys' fees. Relatedly, Code § 18.2-137 provides for criminal punishment for injuring any monuments or memorials described in Code § 15.2-1812.

well as the expenses associated with the City employees placing the [tarps], including the salaries pro rata, and the costs of litigation to force the [tarps'] removal."

The Plaintiffs sought the following relief: (1) that the resolutions and "other actions" taken by the City effecting removal of the Statues and "interference, disturbance, violation, or encroachment" upon the Statues be declared void; (2) temporary and permanent injunctions preventing the removal or covering of the Statues; (3) that the resolutions to remove and cover the Statues be declared unlawful and ultra vires and that Plaintiffs recover "all moneys expended in the entire illegal endeavor;" (4) temporary and permanent injunctions against the City from removing or selling the Statues, or any of the parts that frame them; and (5) recovery of money judgments against the City.

The City filed responsive pleadings, including a demurrer concerning the applicability of Code §§ 15.2-1812, 15.2-1812.1, and 18.2-137.

On February 23, 2018, the circuit court issued a ruling concerning the Plaintiffs' request for an injunction relating to the tarps on the Statues. It entered a temporary injunction and ordered the removal of the tarps. In explaining its reasoning, the circuit court analogized covering the Statues to a "removal" because both result in the Statues no longer being able to be seen or viewed by the public.

In September 2019, the parties entered certain stipulations of fact. Pursuant to this filing, the parties stipulated that "neither Plaintiffs nor Defendants will present additional evidence at trial on the issue of any Plaintiff's standing" and that the Plaintiffs' standing would be determined based upon the allegations as set forth in the Revised Second Amended Complaint. At a subsequent hearing, the City argued that the Plaintiffs did not have taxpayer standing because no expenditure had been made respecting the removal of the Statues, and that an

6

appropriation for that purpose was not enough to trigger taxpayer standing.  The City contended

that the Plaintiffs were worried about an authorized expenditure being made in the future, but

that there had not been one made yet.  The Plaintiffs argued that their complaint sufficiently

alleged facts to give rise to taxpayer standing because they alleged that the City planned to spend

taxpayer funds.

The circuit court reconfirmed its ruling on the demurrer, that Code §§ 15.2-1812

and -1812.1 applied to the Statues.  It also ruled that the Plaintiffs had standing on three different

bases: (1) all but five of the Individual Plaintiffs had individual or representative standing under

general standing principles because they demonstrated they would be legally injured by the

removal of the Lee Statue; (2) all of the Plaintiffs had statutory standing under Code

§ 15.2-1812.1 because they were persons "with an interest in the matter" and they were

authorized to bring an action for declaratory and injunctive relief to enforce compliance with

Code § 15.2-1812; and (3) plaintiffs Payne, Yellot, Tayloe, Amiss, and Weber had taxpayer

standing for the purposes of challenging the City's actions as ultra vires, specifically noting that

"taxpayers would have standing to challenge what they assert is an unlawful and illegal

expenditure of funds."

On October 15, 2019, the circuit court entered three orders:  (1) a Declaratory Judgment

Order; (2) a Permanent Injunction Order; and (3) a Damages Order.

In its Declaratory Judgment Order, the circuit court incorporated its previous rulings that

Code §§ 15.2-1812, 15.2-1812.1, and 18.2-137 were applicable regarding the Statues, and

granted Plaintiffs' request for declaratory judgment.  The circuit court declared certain clauses of

the City's February 6, 2017 resolution to be ultra vires and void because they were violative of

Code § 15.2-1812.  Specifically, the circuit court ruled that the first clause in the City's

resolution, stating that the Lee Statue was to be removed, was contrary to the explicit terms of Code § 15.2-1812, "and accordingly [declared] the first clause of the resolution to be ultra vires, and null and void ab initio." It determined that the September 2017 resolution ordering the removal of the Statues following a favorable disposition of the pending court case was not ultra vires because it was conditional. The circuit court then concluded that renaming and redesigning the parks is permitted, but ruled that "moving, removing, selling or giving away, damaging, [] destroying, defacing, obscuring, interfering with, encroaching upon, or obstructing the public's right of view" to the Statues would be unlawful and ultra vires based upon Code § 15.2-1812. It adjudged that the City's action of temporarily concealing the Statues for purposes of mourning was not ultra vires, but that the suggestion of permanent concealment, as recorded in September 18, 2017 council meeting minutes, would be without authority and ultra vires.

In its Permanent Injunction Order, the circuit court incorporated its previous rulings regarding the applicability of Code §§ 15.2-1812, 15.2-1812.1, and 18.2-137, and permanently enjoined the City from "disturbing, interfering with, violating, or encroaching upon" the Statues; the order also enjoined the City from the "removal of, damaging or defacing, violating or encroaching upon the monuments at issue."

In its Damages Order, the circuit court held that "the harm and loss [established by Plaintiffs] did not give rise to damages recoverable under the terms of . . . Code § 15.2-1812.1." The circuit court reasoned that while the tarps did disturb, interfere with, and encroach upon the Statues, there was no physical damage and therefore, the circuit court could not award damages to the Plaintiffs under Code § 15.2-1812.1. Thus, the circuit court concluded that the only issue remaining before it was litigation costs, including attorneys' fees.

8

On January 21, 2020, the circuit court issued a letter opinion awarding Plaintiffs attorneys' fees pursuant to Code § 15.2-1812.1.  The circuit court reasoned that "the [P]laintiffs unquestionably prevailed in this case" because they achieved their main goal: preventing the Statues from being removed.  On January 29, 2020, the circuit court entered a final order disposing of the entire matter before it, consistent with its previous orders, and awarding a judgment against the City in the amount of the Plaintiffs' attorneys' fees and costs.

The City appeals.  We granted four assignments of error:

1. The trial court erred when it interpreted the provisions of Virginia Code §§ 15.2-1812 and 15.2-1812.1 to allow award of attorneys' fees and costs against the City, because Payne neither alleged nor proved any damages or attorneys' fees recoverable under § 15.2-1812.1, § 15.2-1812 does not authorize attorneys' fees, and the complaint identifies no other basis for recovery of attorneys' fees.

2. The trial court erred in construing the provisions of Va. Code §§ 15.2-1812 or []15.2-1812.1 to authorize a civil action against the City for declaratory judgment or a permanent injunction prohibiting the City from removing statues of Robert E. Lee and Thomas J. Jackson (together "Statues") from its parks, because neither § 15.2-1812 nor § 15.2-1812.1 authorizes such actions.

3. The court erred by adjudicating claims for declaratory and injunctive relief, because the doctrine of taxpayer standing does not provide a basis for the Payne plaintiffs to assert an action against the City for declaratory judgment that the City's resolutions violated Va. Code § 15.2-1812, or for a permanent injunction prohibiting removal of the Statues.

4. Va. Code § 15.2-1812 (1997, as amended) does not govern the City's Statues, which were erected in the 1920s, and the trial court erred by interpreting the statute as operating retroactively to prohibit removal of the Statues from the City's parks.

ANALYSIS

The circuit court based all the relief it granted to the Plaintiffs upon its interpretation of Code § 15.2-1812, and its conclusion that Code § 15.2-1812 applied to the Statues and regulated the City's right to move or cover the Statues.  Thus, analysis of the City's fourth assignment of error, which challenges the applicability of Code § 15.2-1812 to the Statues, is relevant to the

9

resolution of all the other assignments of error in this appeal. Therefore, we will initially address the issue of whether Code § 15.2-1812 applies to the Statues.

It is undisputed that prior to the initial passage of Code § 15.2-1812 by the General Assembly in 1997, there was no general law or other prohibition which prevented the City from moving or covering its Statues or any of its monuments or memorials of any type as the City saw fit. The Plaintiffs claim, and the circuit court ruled, that Code § 15.2-1812 authorized the City to erect monuments and memorials for any war or conflict enumerated therein and that it was also intended to regulate the City's ability to move or cover any monument or memorial it had erected previously, which was related to any war or conflict mentioned in the statute. The City disagrees.

Statutory interpretation is a question of law we review de novo. *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). "We consider the language of [the] statute at issue to determine the General Assembly's intent from the plain and natural meaning of the words used." *Hoffman Fam., L.L.C. v. City of Alexandria*, 272 Va. 274, 284 (2006). In interpreting a statute, we are bound by "the plain language of a statute unless the terms are ambiguous or applying the plain language would lead to an absurd result." *Boynton v. Kilgore*, 271 Va. 220, 227 (2006) (internal citations and quotation marks omitted). In addition, "[t]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction." *Vollin v. Arlington Cnty. Electoral Bd.*, 216 Va. 674, 679 (1976); *see also Davis v. County of Fairfax*, 282 Va. 23, 28 (2011).

Code § 15.2-1812 provided that

[a] locality may, within the geographical limits of the locality, authorize and permit the erection of monuments or memorials for any war or conflict, or for any engagement of such war or conflict, to include the following monuments or memorials: . . . Confederate or Union monuments or memorials of the War

10

Between the States (1861-1865) . . . . If such are erected, it shall be unlawful for the authorities of the locality, or any other person or persons, to disturb or interfere with any monuments or memorials so erected, or to prevent its citizens from taking proper measures and exercising proper means for the protection, preservation and care of same. For purposes of this section, "disturb or interfere with" includes removal of, damaging or defacing monuments or memorials, or, in the case of the War Between the States, the placement of Union markings or monuments on previously designated Confederate memorials or the placement of Confederate markings or monuments on previously designated Union memorials.

As previously noted, this statute was initially passed in 1997 and has been amended several times, *see* 1997 Acts ch. 587, 1998 Acts ch. 752, 2005 Acts ch. 390, 2010 Acts ch. 860, and prior to it being passed, there was no general statute that dealt with the erection or removal of Confederate or any other monuments or memorials in independent Virginia cities; Code § 15.2-1812's predecessor statute explicitly applied only to counties. *See* 1904 Acts ch. 29.[7]

It has long been the law of the Commonwealth that retroactive application of statutes is disfavored and that "statutes are to be construed to operate prospectively only unless a contrary intention is manifest and plain." *See, e.g., Town of Culpeper v. Virginia Elec. & Power Co.*, 215 Va. 189, 194 (1974). "Absent an express manifestation of intent by the legislature, this Court will not infer the intent that a statute is to be applied retroactively." *Bailey v. Spangler*, 289 Va. 353, 359 (2015).

The City argues that the circuit court's interpretation of Code § 15.2-1812 is erroneous. It avers that Code § 15.2-1812 does not apply to the Statues, which were erected before

---

[7] "The circuit court of any county be, and it is hereby, empowered, with the concurrence of the board of supervisors of such county entered of record, to authorize and permit the erection of a Confederate monument upon the public square of such county at the county seat thereof. And if the same shall be so erected, it shall not be lawful thereafter for the authorities of said county, or any other person or persons whatever, to disturb or interfere with any monument so erected, or to prevent the citizens of said county from taking all proper measures and exercising all proper means for the protection, preservation, and care of the same." *See* 1904 Acts ch. 29.

Code § 15.2-1812 was passed.  The City asserts that the circuit court failed to properly apply the plain language of the statute, and contends that, upon examination of the language used in Code § 15.2-1812, it is plainly evident that the statute does not express an intention that it be applied retroactively to monuments and memorials erected before the statute was passed.  The City claims that the circuit court erred when it inferred legislative intent, that the statute be applied retroactively, from the list of "bygone" wars and conflicts enumerated in Code § 15.2-1812.  It states that the inclusion of monuments and memorials regarding wars and conflicts from long ago does not evince a clear manifestation of intent that the prohibitions mentioned in Code § 15.2-1812, concerning the disturbance of monuments and memorials, apply to monuments and memorials erected long ago or at any time before Code § 15.2-1812 was passed.

The Plaintiffs assert that Code § 15.2-1812 is applicable to the Statues.[8]  The Monument Fund contends that adoption of the City's interpretation of Code § 15.2-1812 would render the current statutory scheme of protection for war memorials arbitrary because whether a monument or memorial dedicated to a war or conflict erected by an independent city was subject to the purview of Code § 15.2-1812 would be dependent upon when it was erected.  It argues that "[t]here is nothing 'retroactive' about applying a statutory prohibition to acts performed after that prohibition has gone into effect."  We disagree with the Plaintiffs.

A review of the plain language used in Code § 15.2-1812 indicates that the statute's application is prospective.  It states that a "locality *may*" erect war memorials and then provides that "if *such*" are erected, meaning if statues are erected pursuant to the statute, then it shall be

---

[8] While the Individual Plaintiffs and the Sons of Confederate Veterans did not address this assignment of error in their briefing, their arguments presuppose the applicability of the statutes to the Lee and Jackson Statues.

unlawful to disturb or interfere with "such" statues, meaning statues erected pursuant to the authority provided by Code § 15.2-1812. (Emphases added.)

More specifically, Code § 15.2-1812 provides localities, which includes independent cities, with the ability to authorize and permit the erection of monuments and memorials to any war or conflict, and puts them on notice that they will be prohibited from the disturbance or interference with that monument or memorial after it is erected. It is worth noting that both the authorization and the prohibition sentences in Code § 15.2-1812, like those in the predecessor statute which only applied to counties, are written using the present tense. *See* 1904 Acts ch. 29. The first sentence, the "authorization" sentence, provides that "[a] locality *may . . .* authorize and permit the erection of monuments . . ." and the following sentence, the "prohibition" sentence, notes that it applies "[i]f such *are* erected." (Emphases added.) In which case, "it *shall* be unlawful" to disturb or interfere with those monuments or memorials. (Emphasis added.) Thus, the present tense language used in the statute indicates that the statute applies to monuments and memorials erected pursuant to the authorization provided to localities through Code § 15.2-1812, and the prohibition against disturbing or interfering with those memorials is limited to the memorials authorized by Code § 15.2-1812. The Statues accepted by the City of Charlottesville in the 1920s were not acquired pursuant to the authority conveyed by Code § 15.2-1812, so the removal or covering of those statues is not regulated by the prohibitions stated in Code § 15.2-1812. In other words, the prohibitions in Code § 15.2-1812 apply only to "such" monuments or memorials that are erected pursuant to the statutory authority granted by the General Assembly and not to all war memorials that may have been erected at any point in time, as claimed by the Plaintiffs.

13

Although the statute could be clearer, a plain language analysis of the statute indicates that the prohibitions in Code § 15.2-1812 are limited to monuments and memorials erected pursuant to the authority granted by the statute. Additionally, there is no language in the statute that demonstrates an intent on the part of the General Assembly for the prohibitions in Code § 15.2-1812 to apply to monuments or memorials erected by cities prior to 1997.

Unless a contrary intent is manifest beyond reasonable question on the face of an enactment, a statute is construed to operate prospectively only. *Bailey*, 289 Va. at 358-59. The plain language of the statute does not manifest an intent that the prohibitions in the statute are to apply to memorials erected by cities prior to the enactment of Code § 15.2-1812. The failure to express an intention to make a statute retroactive evidences a lack of intention to do so. *Ferguson v. Ferguson*, 169 Va. 77, 87 (1937). This is so because, as we have previously noted, the General Assembly knows how to make its intent manifest that a statute has retroactive application. *See, e.g., Bailey*, 289 Va. at 359-60 (concluding that since "the legislature could have expressly stated that [a] statute retroactively applies . . . if it had desired to do so," this Court "will not infer the intent that a statute is to be applied retroactively" in the "[a]bsen[ce of] an express manifestation of intent by the legislature" that a retroactive effect is intended). Here, there is no textual support for the proposition that the restrictions stated in Code § 15.2-1812 were intended to apply to monuments and memorials that were erected by cities before the statute was enacted.

The Court realizes that this is an issue of first impression, and acknowledges the thought and care with which the circuit court considered this matter, but we find the rationale for the circuit court's interpretation of Code § 15.2-1812 to be unpersuasive, and in contradiction of the actual words used in Code § 15.2-1812. The circuit court declined to find that the prohibitions in

14

Code § 15.2-1812 only applied to monuments and memorials erected prospectively, even though it admitted that a "strictly technical reading of the statute and legislative history" could support such a determination and it acknowledged that its ruling was contrary to a "ruling by the Circuit Court of the City of Danville, and an opinion by the Attorney General of the Commonwealth."[9] It declined to apply that "strictly technical" interpretation of Code § 15.2-1812 because it believed that the General Assembly intended for the prohibitions to provide protection to the many memorials and monuments erected by cities prior to the passage of the statute, reasoning that localities would be unlikely to construct monuments and memorials, prospectively, for wars that took place long ago, and the prohibitions in the statute would therefore have an overly limited reach, if only applied prospectively. Based upon its conception of the intent of the statute, the circuit court opined that the strict interpretation of Code § 15.2-1812 seemed absurd and would defy logic and common sense. We disagree.

The standard for interpreting a statute is well-established and is referenced earlier in this opinion, but bears repeating; courts must apply plain language when it is unambiguous and its application does not lead to an absurd result. *See, e.g., Boynton*, 271 Va. at 227. An absurd result describes an interpretation that results in the statute being internally inconsistent or otherwise incapable of operation. *Covel v. Town of Vienna*, 280 Va. 151, 159 (2010). Prior to 1997, no war memorials or monuments erected by localities, other than counties, were subject to a general statute that prohibited them from being moved or covered. It was not absurd for the General Assembly not to provide such protections to those war monuments and memorials prior to 1997. Likewise, interpreting Code § 15.2-1812 in a manner such that it provided protection to

---

[9] The circuit court was correct in its conclusion that neither the judgment of the Circuit Court of the City of Danville nor the opinion of the Attorney General of the Commonwealth created precedent which was binding upon it.

15

statues erected in the future, but not to those erected in the past would not result in a law which was internally inconsistent or incapable of being applied. We disagree with the circuit court's conclusion that such a statute would be absurd.

The judiciary is not to substitute its own judgment in place of the General Assembly's; rather than inferring the intent of legislation, our role is to ascertain the intent of the General Assembly as evidenced by the words used by it. A plain language analysis indicates that Code § 15.2-1812 only provides prospective authority for localities to erect war monuments and memorials, and that Code § 15.2-1812's prohibition on moving or covering war monuments or memorials only applies to monuments and memorials erected prospectively under that statute's grant of authority. The statute has no language which imposes regulation upon the movement or covering of war monuments and memorials erected before Code § 15.2-1812 was enacted. The circuit court erred in failing to interpret the statute according to its plain language meaning.

In the present case, the Statues were erected long before there was a statute which both authorized a city's erection of a war memorial or monument and regulated the disturbance of or interference with that war memorial or monument. The Lee Statue and the Jackson Statue were not erected pursuant to Code § 15.2-1812 and so, the prohibitions against disturbing or interfering with monuments or memorials erected pursuant to Code § 15.2-1812 do not apply to the Statues. In other words, Code § 15.2-1812 did not provide the authority for the City to erect the Statues, and it does not prohibit the City from disturbing or interfering with them.

For the above stated reasons, we find that the circuit court erred in concluding that Code § 15.2-1812, and its prohibitions regarding disturbing or interfering with war monuments and memorials, applied to the Statues and regulated the City's removal and covering of the

16

Statues.  Because Code § 15.2-1812 does not apply to the Statues, the circuit court erred in granting attorneys' fees and costs, as well as declaratory and injunctive relief against the City.

CONCLUSION

The Declaratory Judgment Order, Injunction Order, Damages Order, Final Order, and all relief granted to the Plaintiffs by the circuit court was based upon the circuit court's determination that Code § 15.2-1812 applied to the Statues, and that the City violated Code § 15.2-1812.  We have determined that the circuit court erred in ruling that Code § 15.2-1812 applied to the Statues and in concluding that the City's actions concerning its desire to move or its covering of the Statues were prohibited by Code § 15.2-1812.  Accordingly, for the foregoing reasons we will reverse and vacate the judgments and orders of the circuit court and all forms of relief granted by the circuit court to the Plaintiffs, and enter final judgment here for the City.

*Reversed and final judgment.*